[No. 5967.]

## WESTON, ADMINISTRATRIX, v. LIVEZEY.

1. Appeal—An appeal where no appeal lies will be converted into a writ of error.—(144)

2. Mortgage—Effect of Conveyance by Mortgagor to Mortgagee—The conveyance of the mortgaged premises by mortgagor to mortgagee extinguishes the mortgage, as to the mortgagee, unless a contrary intention is manifest; and this, even though as to third persons the mortgage does not merge.—(148)

3. Evidence—Admissions—Effect—A promise not supported by consideration, to pay what is not owing, does not charge the promisor.—(154)

4. Contracts—Consideration—A promise without consideration to pay moneys for which the promisor is not liable is without effect.—(154)

Plaintiff, an administratrix, brought an action against defendant demanding $30,000 in one item for moneys lent by the intestate, and over $15,000 in another for moneys paid out. She had previously instituted a similar action upon the same accounts, and, upon a stipulation of counsel to the effect that "all things in controversy herein are settled," the action was dismissed. She had presented a final report stating that she had disposed of all the properties of the estate, and that nothing remained to be done except to distribute the balance in her hands, making no mention of any claim against the defendant. On another occasion, before the institution of the suit, she had made an express declaration in writing that defendant was in no way indebted to the decedent. Held, that these solemn declarations were not overcome by evidence of a promise of defendant to pay the amount, and payments made accordingly, the parties being brother and sister, and plaintiff in straightened circumstances, and the defendant, at the time of the promise, anticipating the receipt of a very large profit from pending negotiations.—(151-155)

5. Mortgage—Purchase Subject to—One who purchases land expressly subject to a mortgage has no action against the mortgagor for moneys paid, without his request, to discharge the mortgage.—(156)

6. Where the evidence is such that a verdict for the plaintiff ought to be set aside, the court should direct a verdict for the defendant.—(155)

*Error to Denver District Court*—Hon. BOOTH M. MALONE, Judge.

Mr. G. K. ANDRUS, for plaintiff in error.

Mr. S. C. WARNER, for defendant in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

In August, 1904, Letitia B. Weston, as administratrix of the estate of A. S. Weston, deceased, brought suit against John Livezey, Jr., to recover upon two items of indebtedness. The first was for $30,000.00, alleged to have been loaned by A. S. Weston to the defendant on or about the 29th day of November, 1884, which the defendant promised to repay with interest at ten per cent. per annum. Regarding the second item, she alleges that about May 1st, 1888, the defendant was indebted to A. S. Weston in the sum of $15,493.00, for moneys laid out and expended at the instance and request of the defendant in taking up and discharging his note, payable to J. V. Holcomb. Upon these items, according to the averments of her complaint, the defendant was given certain credits, and she prayed judgment for the balance, with interest.

The defendant interposed four separate defenses: (1) A denial of the indebtedness sued upon and an allegation that the plaintiff was not the administratrix of the estate; (2) that the first item of indebtedness sued upon had been fully paid; (3) that both items were barred by the statute of limitations; and (4) a defense of *res judicata* as to both items. To these defenses plaintiff filed a replication. The case came on for trial before a jury and at the conclusion of the testimony, the court directed a verdict for the defendant, which was returned and judgment entered accordingly. The plaintiff brought the case

here for review on appeal. It is apparent that the case is not appealable, but, by virtue of the provisions of § 388a of the Civil Code, we have directed the clerk to enter the action as pending on error.

We shall only consider the second defense, as that is decisive of the case. The important question presented thereby is, whether or not the first item of indebtedness was discharged by a conveyance to Weston of the property which had been mortgaged to secure it. In March, 1884, the defendant owned an interest in the Col. Sellers and Accident lode mining claims, in Lake county, upon which he executed a deed of trust for the purpose of securing a promissory note to J. V. Holcomb for the sum of $4,500.00 and interest. November following, defendant executed an agreement whereby he promised to pay Weston the sum of $30,000.00, payable in installments out of the dividends from these properties, and executed a deed of trust to secure the amount which he acknowledged to owe, and promised to pay Weston. This agreement provided that the sum thereby agreed to be paid should become due in any event in two years from its date. Several payments were made in accordance with the provisions of the agreement, above referred to, and on the 28th day of April, 1886, the defendant and Weston made a supplemental agreement, wherein they recited that they were desirous of paying off the encumbrance on the mine, including that secured by the deed of trust to Holcomb, and for that purpose agreed that a portion of the dividends to become due from the interest of the defendant in these mines, should be applied in a certain way, and the remainder to the payment of the Holcomb indebtedness. This agreement further provided that a certain sum was to be paid Weston monthly out of such dividends in advance of the application of any part thereof to the discharge of

the Holcomb debt. In this agreement, the defendant was designated as party of the first part and Weston as party of the second part. It further provided:

"The party of the first part shall make and execute to the party of the second part a deed of his interest in said mines, and deposit the same with C. J. Rowell, in escrow, to be by him delivered to the party of the second part as follows:

"(1) On the failure to apply such dividends or any part thereof strictly as above set forth.

"(2) In any event said deed shall be delivered to said party on the 29th day of November, 1886, unless the full amount due from the first party to the second party shall have been before that time fully paid, in which case the same shall be returned to the party of the first part. In case the deed shall be delivered to the party of the second part as aforesaid, then the first party shall have a right to a reconveyance at any time within six months after such delivery, on the payment of the balance due to the party of the second part.

"Nothing herein shall be held to impair the rights of the party of the second part by virtue of the agreement and deed of trust first above mentioned, after condition is broken."

In compliance with this agreement the deed referred to was executed and placed in escrow, and on or about the 29th day of November, 1886, was delivered to Weston. Subsequently the Holcomb deed of trust was foreclosed, Weston becoming the purchaser at the trustee's sale. He paid for the mortgaged property the full amount of the indebtedness to Holcomb, which was between nine and ten thousand dollars, and this constitutes the second item of indebtedness mentioned in the complaint.

In April, 1890, Weston commenced a suit against W. F. Patrick *et al.,* which involved the identical

interests conveyed to him by the deed from the defendant. In his complaint in that case he expressly stated that he was the owner in fee of these interests and had been since November 29, 1886. In his replication, filed in that case, he again avers that he purchased these interests from the defendant under deed dated April 28, 1886, which was duly filed for record on the 29th day of November, following. He further states in this replication that his purchase from the defendant was subject to the lien of a deed of trust executed on the interest of the latter in April, 1884, by the defendant to secure Holcomb the payment of defendant's promissory note in the sum of $4,500.00, with interest thereon.

In September, 1890, Weston executed a deed of trust upon the interest secured from the defendant to secure one D. H. Dugan a promissory note for the sum of $6,773.32. In February, 1895, he conveyed these interests to the Iron Silver Mining Company for the expressed consideration of $5,000.00. In the trial of the Patrick case Weston testified that the actual consideration for the deed from Livezey was the sum of $30,000.00. He recovered and collected a judgment for $6,500.00 in this case. The mother-in-law of defendant was called as a witness in his behalf, and testified that in October or November, 1888, at the St. James hotel, in the city of Denver, she had a conversation with Weston, regarding the interests conveyed by Livezey to him, in which she says:

"I asked Judge Weston if, when he got his claim, defendant's claim, satisfied, if the interest would come back to Mr. Livezey. He said, no; he could make me no promise; but he told me that it was his interest. He said he would tell me this, but would make no promise—that if the interest paid his claim in a year or two, that while he made no

promise to do this, 'he might give Mr. Livezey something,' but if it dwindled along for three or four years he said, 'you know the interest belongs to me.' I said I did, so far as the law decided it, and he said: 'If it dwindles along for three or four years, then it would be a different matter.' I needn't consider this a promise or any part of a promise, and I said I thought perhaps he would be willing, after his claim was satisfied, to let the interest revert to Mr. Livezey. No, he said, it was his interest; he took it for a claim he had against Mr. Livezey, and it belonged to him.''

Judge Weston died in 1897. It does not appear that he ever made any demand upon defendant to pay the balance claimed by plaintiff to be due on the item of thirty thousand dollars.

The purpose of the agreement entered into between the defendant and Judge Weston April 28, 1886, was to make provision for the payment of this item. The agreement so recited. To that end it was arranged that the dividends from the properties belonging to the interest held by defendant should be applied in a certain way, and in the event the amount thus realized was not sufficient to discharge such indebtedness by the 29th day of November, 1886, or was not otherwise discharged, that then the interest of defendant should be conveyed to Judge Weston. In order to carry out this arrangement a deed was executed, placed in escrow, and delivered. Aside from the statement in the agreement to the effect that the defendant should have a right to a reconveyance of the property at any time within six months after the delivery of the deed, on the payment of the balance due to Judge Weston, there is nothing in the agreement expressly indicating what the consideration for such conveyance was to be. It does not state what sum defendant was to receive or be credited

upon his indebtedness as a consideration for such conveyance; neither does it state that Judge Weston was to dispose of the property and account to the defendant for the proceeds thus realized. We must, therefore, conclude, from the terms of the agreement, that it was the intention of the parties, as between themselves, to cancel the indebtedness by the conveyance, for the reason that where the mortgagee acquires the fee in the land mortgaged by conveyance from the mortgagor, the mortgage debt, so far as the mortgagee is concerned, is extinguished, unless a contrary intention is manifest.—*Burnet v. Denniston,* 5 Johns. Chan. (N. Y.) 35; *Dickason v. Williams,* 29 Mass. 182; *Weiner v. Heintz,* 17 Ill. 259; *Coon v. Smith,* 88 N. Y. Supp. 261.

The transaction may not have merged the mortgage and legal title, but that question is not involved and is not material in determining any question here presented. Third parties are not asking to enforce any lien upon the premises in advance of the mortgage.

But, aside from the agreement, we have positive evidence as to what the intention of the parties was. In the fall of 1888, about two years after the delivery of the deed, Judge Weston was approached in the interest of the defendant, and asked whether or not he would account to the latter for any money realized over and above the amount of his claim, to which he answered that he would not promise to do so, because the property belonged to him. In April, 1890, Weston commenced a suit which involved the interests conveyed by defendant. In his pleading in that case, he expressly stated that he was the owner in fee of these interests; that he purchased them from defendant; and in the trial of the action, testified that the consideration for the deed from Livezey was the sum of thirty thousand dollars, the amount of Live-

zey's indebtedness to him. He mortgaged this interest and subsequently sold it. He recovered and collected a judgment in which it was involved. In short, after the delivery of the deed from Livezey, treated the property as his own. This evidence is not disputed, so that it appears from the testimony, independent of the agreement, that the intention of the parties was to satisfy the Livezey indebtedness to Weston by virtue of his conveyance of his interests in the property to him.

Counsel for plaintiff contends that the last clause of the agreement of April 28, 1886, evidences an intention of the parties not to consider the mortgage debt as canceled. The purpose of this clause is made clear from a letter of instructions by Judge Weston, to the party with whom the deed was deposited. In this letter he states: "You are also the trustee in the deed of trust from Livezey for my use. I wish to let this remain in force for the present, to cut off judgment liens, if any there be." Thus, it appears that the object of Judge Weston in not having the deed of trust released was to enable him to assert it against judgment liens which might attach to the Livezey interest, and not because of any claim against him thereunder.

Counsel for plaintiff contends that there was other evidence tending to prove that the conveyance of the property to Weston was not in satisfaction of the mortgage debt, and that for this reason that question should have been submitted to the jury. It appears that a memorandum was found among Judge Weston's effects, dated September 1, 1896, purporting to be a statement of account with the defendant. According to this memorandum he had charged defendant with the $30,000.00 item, interest thereon, the amount paid to discharge the Holcomb note with interest, and had credited him with dividends, inter-

est thereon, and other items realized from the property, which left a balance or a deficit, between the disbursements and receipts of $26,561.00. Plaintiff testified that she showed this memorandum to the defendant; that he acknowledged the balance and promised to pay it, and did make some payments at different times.

With respect to the promise and payments, plaintiff was probably corroborated by two other witnesses. According to the testimony of the plaintiff at the time of the first promise, it appears that defendant was negotiating a deal which, if successful, would net him something like $200,000.00. She says he agreed to pay her the balance, with interest, and buy her a home when he consummated this deal. It does not appear that he was successful in the transaction referred to. The balance claimed on the $30,000.00 item was barred by the statute of limitations, and perhaps a sufficient answer to the contention of counsel for plaintiff would be that even if it be conceded that defendant made the promise claimed, and paid some amounts upon the balance of the account, such promise and payments would only be regarded as competent to remove the bar of the statute of limitations, and would not tend to establish an obligation which it is apparent from the evidence above referred to had no existence. It is not necessary, however, to rest the decision of this question upon that proposition, and we express no opinion thereon.

It appears that in August, 1903, plaintiff, defendant and his wife entered into a written agreement, whereby they agreed to share the expense of caring for the mother of Mrs. Weston and her brother, the defendant, the latter agreeing to pay a certain sum to Mrs. Weston each month. In this agreement we find the following, an express acknowl-

edgment on the part of Mrs. Weston that her brother was not indebted to her.

"I wish further to state of my own free will and accord, that the above agreement has no influence over me, nor any connection in any way with what I am going to state, namely: That John Livezey, my brother, does not owe me, Letitia B. Weston, nor my husband's estate, any money whatever, and that I understand thoroughly that Florence B. and John Livezey have entered into this agreement only to assist me and care for mother."

In November, 1898, plaintiff, in her capacity as administratrix, petitioned the county court of Lake county, in which the probate of the estate was pending, for leave to employ counsel at the expense of the estate, to prosecute the identical claim against the defendant embraced in the action at bar. Her application was granted. Thereafter the heirs and devisees of the estate petitioned the court to modify such order, for the reason, among others stated, that the action against defendant was, to say the least, of a doubtful character, and was largely the result of the personal feeling between Mrs. Weston and the defendant. On this petition and the hearing thereon, the court ordered that no further funds of the estate should be expended in prosecuting the claim against the defendant.

Prior to the order of November, 1898, plaintiff had commenced an action against defendant upon the same items now under consideration. About the same time, and a little later, defendant, as administrator of his father's estate, commenced an action against plaintiff, based upon some transaction between his father and Judge Weston. Subsequent to the order inhibiting Mrs. Weston from expending further funds of the estate in the prosecution of her action against defendant, and about the 14th day of

December, 1899, a stipulation was entered into in that case, signed by the respective counsel for the parties as follows:

"It is hereby stipulated that all matters and things in controversy in the above entitled case are settled, and that said case be dismissed, and each party pay his own costs."

This stipulation was filed February 10, 1900, and thereupon the following order was entered:

"At this day it is ordered by the court that this case be, and the same hereby is, dismissed, upon the payment of costs, according to the stipulation on file herein."

A similar stipulation and order was filed and entered in the suit commenced by defendant against plaintiff.

It was upon the stipulation and order in plaintiff's suit that the plea of *res judicata* was based; but we do not consider it for the purpose of determining that question, but regard it as competent, as tending to establish in the light of what subsequently occurred, that Mrs. Weston fully recognized the defendant was not indebted to the estate upon the items sued upon.

In December, 1900, in her capacity as administratrix, plaintiff filed a report in which she set forth, in minute detail, the execution of her trust, and stated that there was nothing further to be done except the disposition of certain personal property therein described. She did not mention the action which she had commenced against the defendant, nor the one he had commenced against her. She asked that her accounts might be examined and approved, and that she be discharged from the duties of her office as administratrix, and her bondsmen released.

In September, 1901, she filed what purported to

be her final report, in which she stated that she had sold and disposed of all of the property of the estate; that there was nothing further to be done but to distribute the balance in her hands. She then proceeds to state the balance and the unpaid claims, and asks that she be permitted to make distribution, and winds up the report by requesting that when she has distributed the amount in her hands "that she be forever discharged and released as administratrix of said estate." In this report she makes no mention of either of the actions above referred to. This report was approved, and an order entered to the effect that after the distribution of the money in her hands, and the filing of vouchers therefor with the clerk, that she be discharged.

There is also another order of the county court in the matter of the estate of which plaintiff was administratrix, which it is proper to notice. It appears that on the 11th day of June, 1901, the surety on her bond asked to be released. The application was granted. In this proceeding the administratrix appeared by her attorney and stated to the court that it would be difficult for her to secure another bond, and that there were no assets belonging to the estate to be realized upon except certain chattels, then advertised for sale, and that upon the sale of such chattels, the proceeds would be deposited with the judge of the court, and that she would thereupon and at once make her final settlement, and ask to be discharged as such administratrix. Upon this showing, the court ordered that she pay into court the money arising from the sale of the chattels mentioned, and make settlement of the estate immediately thereafter, without furnishing another bond.

On this testimony we think the court was clearly right in holding that the testimony adduced on the part of the plaintiff, tending to prove that defendant

had promised to pay the balance of the items sued upon, and had made some payments thereon, could not be regarded as overcoming the solemn declarations and admissions of the plaintiff, that the defendant was not indebted to the estate.

The relationship between the parties was that of brother and sister. Plaintiff was unquestionably in straightened circumstances at the time when she claims her brother made the promise and payments he did. If he was successful in making the amount anticipated it would not be at all unnatural for him to be generous with his sister in the way of discharging the loss which it appears from the statement found with Judge Weston's effects he had sustained in disposing of the interests purchased from the defendant, although he was not under any obligation to do so. That such was the reason which may have prompted the defendant to tell his sister that he would pay the amount of such loss, is evidenced by the fact that, according to her own statement, he said he would also buy her a home. He certainly was under no obligation to do the latter by reason of any transaction had with Judge Weston, with respect to the items involved. She had commenced a suit to recover on these items in 1898. After the order forbidding her to expend any further money of the estate in prosecuting that action, which was secured through the intervention of the heirs and devisees, who seemed to realize that her action was without any foundation, the suit was dismissed. Thereafter she filed her final report in which she solemnly stated, under oath, that the affairs of the estate had been fully administered upon, asked to be discharged, and secured an order to that effect. She must have known when she filed her final report in September, 1901, and when she filed the report in December, 1900, and when the proceedings releasing her surety

were had in June, 1901, of the existence of the claim against the defendant, if, in fact, it did exist; and also of the action commenced by him against her, had it not been dismissed; and yet she says nothing about either of these actions or the claim against defendant; but, on the contrary, asserts that all matters pertaining to the estate, except a few minor items, none of which referred to the claim against defendant, had been adjusted and settled. She could not settle the estate if there was an unsettled claim in its favor against the defendant; neither could she have settled its affairs if the suit against her had not been disposed of. According to her reports, she paid counsel in these actions for services, presumably, for such as were rendered therein, as she does not claim that the payments were for any other services rendered.

In addition we find that in 1903, nearly two years after the order on her final report, and before the case at bar was commenced, she conceded that the defendant was neither indebted to her nor her husband's estate. Unquestionably, as against these solemn declarations, which are not explained in any way which would relieve the plaintiff from their force and effect, the oral evidence to the effect that the defendant had acknowledged the indebtedness sued upon by promising to pay it, and making payments, could not prevail.

When the evidence is such that it would be the court's unquestioned duty to set aside a verdict for plaintiff, should one be returned, a verdict for the defendant should be directed.—*Chivington v. Colo. Springs Co.,* 9 Colo. 597; *Brown Bros. v. Potter,* 13 Col. App. 512.

Having reached the conclusion that plaintiff wholly failed to establish a cause of action on the thirty-thousand-dollar item of indebtedness, it is ap-

parent that the second item has no merit. Judge Weston, in his replication filed in the Patrick case, expressly stated that he purchased the Livezey interest subject to the lien of the trust deed executed to secure the Holcomb note. Having purchased the property in such circumstances, whatever amount he may have paid to discharge that lien was for his own benefit, and not for the benefit or at the request or instance of the defendant.

The judgment of the district court is affirmed.

*Judgment affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE HILL concur.