## No. 14,934.

### BRANTNER v. PAPISH.
(126 P. [2d] 1032)

Decided May 11, 1942. Rehearing denied June 15, 1942.

438

Mr. O. W. Weber, Mr. C. F. Fundingsland, Mr. Carl Cline, Mr. Kenneth Lorrin Smith, for plaintiff in error.

Mr. David E. Griffith, Messrs. Goss and Hutchinson, for defendant in error.

*En Banc.*

Mr. Justice Bock delivered the opinion of the court.

In this case the caveator, a son and heir at law of Barbara Brantner, deceased, contests her will on the sole ground of alleged undue influence exercised over her by proponent and sole beneficiary thereunder, who also is a son and heir at law of deceased. The court, over objections of caveator, sustained proponent's motion for a directed verdict, based upon the ground of insufficient evidence, and judgment was entered admitting the will to probate. Reversal is sought by writ of error. The material points urged for reversal will be considered under the ruling of the court granting the motion for a directed verdict.

The facts alleged to show undue influence are predicated in part upon the death of a former husband of deceased, Anton Raneka, who, it is alleged, was killed on or about May 1, 1890, in Illinois, his death resulting from a pistol-shot wound, and other wounds caused by his precipitation into and down a mine shaft; that John Durklin, who later became the husband of deceased, was charged with the commission of this homicide, deceased being charged as an accessory thereto and incarcerated with him in a prison in Illinois, for her alleged complicity in the murder; that subsequent thereto deceased moved to Colorado and married her alleged accomplice. This marriage was under a name assumed by decedent, and the facts relating to the demise of her husband were kept secret from friends, associates and relatives. After setting forth the above facts, it is specifically alleged in the amended bill of particulars of caveator as follows:

"(d) That subsequently thereto decedent established her residence in the state of Colorado, and became a respected citizen of said state, and that none of the above facts were known to her friends and associates, children or grandchildren, with the exception of the proponent and Mary Mallick, a daughter, Steve Mallick, a son-in-

law, this caveator, a son, and various other parties to this affiant as yet unknown.

"(e) That the proponent well knew these facts and all of them, and well knew the fear and dread with which decedent regarded a disclosure thereof; and that said proponent, through threats and menaces of disclosure thereof, made to the said decedent at various times and almost continuously during her lifetime, and particularly just preceding and at the time of the making of the purported will here involved, so influenced and threatened and created fear of such exposure in the mind of said decedent that she made said purported will entirely in favor of said proponent, and to the exclusion of her other children and grandchildren, and in express conflict with her expressed view and wishes as communicated to said other children and grandchildren, and solely through fear and as the results of said undue influence so exercised.

"(f) That said acts of threats and menace and undue influence were done and performed by the said proponent for the purpose and with the intent of frightening and threatening said decedent and compelling her against her will and against her independent judgment and desire and contrary thereto, to execute the said purported will, and to make provision only for proponent therein."

Was there sufficient evidence to submit the issue of undue influence to the jury? In answering that question we are required to consider all of the offers of proof made by counsel for caveator, of which there were at least three, and to which objections by counsel for proponent were sustained. It is stipulated in the record that under the laws of descent of the state of Colorado, Mary Mallick and the caveator, Anthony Brantner, are heirs at law of decedent, and would have inherited had it not been for the will in question.

The facts contained in the offers of proof, as proposed evidence of the caveator and Mary Mallick, both heirs of decedent, may be summarized as follows: That Anton

Raneka (the surname spelled variously), former husband of deceased, was killed in Braceville, Illinois, in the year 1890; that he had been very brutal to deceased; that she and her subsequent husband, John Durklin, were implicated in this homicide; that Mary Mallick was an eyewitness to her stepfather's death, she being at the time approximately twelve years old; that her mother and her subsequent stepfather were detained for a considerable length of time in a jail in Braceville, Illinois, and that when they were released they came directly to Colorado, where they established their residence. For a short time deceased was known as Antonio Brantner, but subsequently she changed her name to Barbara Brantner; that Mary Mallick and the caveator, some time in May, 1923, while in the presence of deceased, heard Joe Papish, the proponent, say to deceased that if she was going to lend any money to caveator, Anthony Brantner, he would report her concerning the trouble she had had in Illinois, and would cause her to be sent back for trial, and that deceased, in reply thereto, begged him not to do it; that she would not give caveator any money, and began to cry. Mary Mallick, while testifying outside of the presence of the jury, was asked whether she had heard similar conversations, aside from the one in May, 1923, to which she replied, "I heard aplenty but I have no witnesses here that heard it, and so that don't count you say, or they claim it don't count anyway."

Counsel for caveator contend that as the instant case is a will contest proceeding, section 2 chapter 177, '35 C.S.A., has no application whatsoever, and for that reason the court committed error in sustaining objections to the offered testimony of Mary Mallick and Anthony Brantner, children and heirs at law of deceased. This contention is erroneous. We always have followed the minority rule on this question, namely, that unless they come within some of the exceptions mentioned, parties directly interested in the subject of litigation in cases

of this character are incompetent to testify as witnesses, under the provisions of our statute. *In re Shapters Estate,* 35 Colo. 578, 586, 85 Pac. 688, 51. L.R.A. (N.S.) 195; 28 R.C.L., p. 512, §99. While we may be more sympathetic with the majority rule, in our opinion we are not warranted in now adopting it without legislative action, especially since we have said that section 2, supra, is so clear and unambiguous that it requires no construction. *Cree v. Becker,* 49 Colo. 268, 273, 112, Pac. 783.

 It next is contended by counsel for caveator that a very substantial part of the offered and rejected proof is admissible under subsection "Sixth" of section 2, supra, which is as follows: "In any such action, suit or proceeding, any adverse party or parties in interest may testify as to any conversation or admission, or as to all matters and things connected with the subject matter of said action, suit or proceeding, and which conversation and admission and matters and things aforesaid, occurred before the death and in the presence of such deceased and also in the presence of any member of the family of such deceased person over the age of sixteen years, or in the presence of any heir, legatee or devisee of such deceased person over the age of sixteen years; provided, however, that such member of the family, heir, legatee or devisee as the case may be, is present at the hearing of said action, suit or proceeding, or whose testimony is or may be procurable at such trial." In our opinion there is considerable merit in this contention. "Any conversation or admission, or as to all matters and things connected with the subject matter" of this proceeding may be testified to by the heirs of deceased where such conversations or admissions occurred after the heirs became "over the age of sixteen years." This clearly would make admissible evidence of conversations in May, 1923, and any others prior thereto which occurred subsequent to the time these heirs became over the age of sixteen years. The will

was executed July 13, 1923. According to the testimony of one of the heirs, she heard plenty of such conversations. The record discloses that in 1923 both heirs were over the age of sixteen years.

The trial court, in ruling on the objections to evidence of the conversations which took place in May, 1923, sustained the same upon the ground, among others, that caveator had failed to lay a foundation therefor. There were several such rulings, and counsel for caveator seems to have had great difficulty in ascertaining the court's position. For instance, the last ruling by the trial court is as follows: "The proffer of proof by the witness Mary Mallick, as now made by counsel, will be overruled and denied, for the reason that this alleged killing of one Anton Raneka took place in May of 1890, some fifty years ago, when the witness sought to be produced for such testimony was only twelve years of age, and whose competency to testify would be a question of fact, even were she to attempt to testify on her examination of voir dire. Fifty years having elapsed from that time, it would be questionable. Further nowhere does it appear that there was anywhere in the transactions offered to be proven, anything sufficient to have overcome the will and judgment of the decedent, and nowhere is there the slightest indication that this deceased woman was ever charged with this murder, or that there was any likelihood of anyone in authority causing the deceased, after this long lapse of time, and at the time the so-called threats were made, to cause her any particular trouble or discomfort, and especially in view of the fact that within a very short time thereafter, she did make a will in favor of Joe Papish, in the presence of disinterested parties, and that such will was retained in her possession and under her control, up to the time of her death so no presumption can be attached, that it had any effect on her condition. For those reasons, the motion will be overruled and denied and the offer refused." In so far as the evidence of Mary Mallick related to

facts before she became over the age of sixteen years, the ruling as to what happened in 1890 was correct. In other respects it was erroneous. The court mistakenly seemed to be of the opinion that before the evidence of undue influence was admissible, a foundation must be laid by showing that Anton Raneka was murdered, and that deceased was charged with the murder. The statement by the court in its ruling above quoted indicates that it was concerned with some issues which were solely for the consideration of the jury. It appears from the record that deceased was foreign born and somewhat illiterate. The ethical standards. sometimes differ with the level of intelligence. Ignorance generates fear. It is not difficult to conceive, especially in view of the subsequent exemplary life of deceased, that she did not want anyone who had knowledge thereof, to disclose facts concerning her connection with the Raneka homicide as alleged in the caveat. Because of her lack of knowledge of our language and laws, a threat of such disclosure very likely would unduly influence her conduct. She perhaps did not know that it was highly improbable that she still would be accused, in 1923 or later, of the offense alleged to have been committed in 1890; and, independently of that, she may have been very anxious to preserve a good reputation by preventing the statements and disclosures which are alleged to have been threatened by the proponent of the will. Such may be a reasonable inference from the evidence which a jury may consider in arriving at its verdict. Such inferences the court must consider in a light most favorable to the caveator in the determination of a motion for a directed verdict. See, *Jackson, Inc. v. Wilhelm,* 106 Colo. 140, 102 P. (2d) 731. Lack of proof that there actually was a murder or a justifiable homicide, or whether testatrix participated therein does not prevent the showing of such threats by proponent as alleged, resulting in undue domination over his mother in her financial and business affairs. The important fact is

whether such threats, true or false, were made, and the effect thereof upon deceased in controlling her property and in its disposition. The fact, if it be a fact, that the conversations did not relate directly to the execution of a will, or that the heirs had no knowledge of its execution, is unimportant, if the domination and threats were of such degree that they had an undue influence over deceased in what she did or did not do in the disposition or retention of her property, or whether, owing to such threats, proponent had undue control over her actions concerning it. The facts which the trial court seemed erroneously to consider necessary as a foundation before the admission of the conversations in which the threats were made, probably could have been shown from conversations and admissions after Mary Mallick became over the age of sixteen years. The trial court committed prejudicial error in sustaining objections to evidence competent under subsection Sixth, supra.

In the situation disclosed by the record the court should have permitted a broader scope in the introduction of evidence to show undue influence. We have indicated that section 2, supra, should be judiciously applied. *Prewitt v. Lambert,* 19 Colo. 7, 10, 34 Pac. 684. Evidence, if material, of facts occurring after the death of deceased, should be admitted. Section 2, subsection First, supra.

There was some evidence, to which objection, on the ground that it was too remote from the time of the making of the will, was sustained. This offered evidence had to do with conduct of deceased shortly before her death, in the presence of proponent and others. It is the theory of caveator that the alleged undue influence exercised by proponent over deceased continued for a number of years, and until her death. While the purpose of all the testimony as to undue influence is ultimately to show that it was being exercised at the time of the execution of the will, nevertheless, if this influence ceased to exist prior to the death of testatrix, she

would, under the circumstances, have had an opportunity to revoke the same. 28 R.C.L., p. 151, §106. If a will is claimed to have been made under undue influence, declarations of the testatrix both before and after its execution may be given in evidence in support of the claim. 28 R.C.L., p. 152, §107.

■ There was other testimony, given by third parties, that the caveator was left the amount of $1,500, the proceeds of a life insurance policy, by his father, which was retained by deceased; that deceased was worried about the disposition of her property; that she wanted to make a will about two weeks prior to her death; that she wanted caveator taken care of in the will; that proponent was present and assisted in obtaining witnesses to the execution of the will; that proponent and deceased quarreled about her property; that proponent had access to her papers; all of which was material and relevant as disclosing circumstances bearing on the issue of undue influence.

Counsel sought to introduce documentary evidence relating to the death of Anton Raneka which occurred in 1890, to which the court sustained objections. With this evidence, however, we are not now concerned.

■ A careful consideration of the record leads us to the conclusion that material portions of rejected offers of proof and the admitted evidence were sufficient to require a submission of the issue of undue influence to the jury, and the motion for a directed verdict should have been denied.

The judgment is reversed and the cause remanded, with directions that further proceedings shall be in harmony with the views announced in this opinion.

MR. JUSTICE BAKKE dissents.

MR. JUSTICE HILLIARD not participating.