## No. 15,470.

ESTATE OF BRANTNER.
BRANTNER *v.* PAPISH.
(169 P. [2d] 326)

Decided May 13, 1946.

Mr. OLIVER W. WEBER, Mr. CARROLL F. FUNDINGSLAND, Mr. KENNETH LORRIN SMITH, Mr. CARL CLINE, for plaintiff in error.

Messrs. GOSS & HUTCHINSON, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS is a case involving the admissibility of a will to probate. It arose in the county court of Boulder county where, after a jury trial, the will was admitted. The 'caveator had raised two points: (1) An invalid execution; (2) undue influence. On appeal to the district court reliance was centered upon the question of undue influence, and that court, over caveator's objection, granted proponent's motion for a directed verdict based upon the ground of insufficient evidence and entered judgment admitting the will to probate. As appears from our opinion in *Brantner v. Papish*, 109 Colo. 437, 126 P. (2d) 1032, we reversed the judgment of the district court and remanded the case for a new trial on the principal ground that evidence offered by caveator tending to show undue influence had been improperly excluded, and which, if it could be presented as detailed in the offer, was sufficient to warrant a submission of the cause to a jury. Following the remand, a subsequent trial resulted in a verdict in favor of the caveator followed by a setting aside of the verdict by the trial judge—not the same judge who presided in the previous district court trial—and the entering of a judgment for proponent.

Caveator, bringing the case here, specifies five points of error, all of which ultimately involve the one point, namely: Was there sufficient evidence of undue influence to support the verdict of the jury, or was the evidence so insufficient as to justify the action of the judge in setting it aside?

Testatrix, who died in 1938, was survived by three children; the oldest son, Joe Papish, is the proponent of the will, which was executed in July 1923, and the sole beneficiary under it. The estate consists of a house and lot in the mining community of Louisville, valued at $2,000 in the inventory, a car and $640 in cash. The

house, which at first was the residence of testatrix and her three children, had, in the last thirty-two years of her life, been the home of herself and her bachelor son, Joe Papish. This latter situation had resulted from the respective marriages of her other son, Anthony Brantner, the caveator, that of the daughter, Mary Mallick, and their moving into homes of their own. Papish's mine pay cheques were turned over to his mother who used them for their mutual living expenses and, to the amount of $2,500, in improvements to the home. Some $500 of their savings seems also to have gone into stock in a mining company. This stock was registered in proponent's name.

Both sides measure the evidence actually introduced by the offer made in the earlier trial which we outlined in 109 Colo. 437, supra. Counsel for caveator assert that the evidence introduced was even stronger than that outlined in their earlier offer. Counsel for proponent say it fell fatally short of their promise. The record seems to support the latter. A comparison of the proffered evidence, as we summarized it in the former case, with that contained in the record here, discloses the following insufficiencies:

"That Anto Raneka (the surname spelled variously), former husband of deceased, was killed in Braceville, Illinois, in the year 1890." Coroner's jury certificate admitted over objection of proponent's counsel shows death of one Anton Ranika by a pistol shot wound and other wounds resulting from a fall down a mine shaft. The record contains no evidence that testatrix was ever in the State of Illinois.

"That he had been very brutal to deceased." No evidence on this point.

"That she and her subsequent husband, John Durklin, were implicated in this homicide." There is no evidence on this point; nor does the record show that John Durklin or the testatrix had any knowledge of Anton Raneka's death.

"That Mary Mallick was an eye-witness to her step-father's death, she being at the time approximately twelve years old." From the record it appears that no question was asked of Mary Mallick to elicit such testimony. She volunteered the statement while the court was ruling on a question involving another matter about which she had been interrogated.

"That her [Mary Mallick's] mother and her subsequent step-father were detained for a considerable length of time in a jail in Braceville, Illinois." Again no evidence on this point, and no question asked concerning it.

"For a short time deceased was known as Antonio Branter, but subsequently she changed her name to Barbara Brantner." There is nothing in the record to support this statement.

"That Mary Mallick and the caveator, some time in May 1923, while in the presence of deceased, heard Joe Papish, the proponent, say to deceased that if she was going to lend any money to caveator Anthony Brantner, he would report her concerning the trouble she had had in Illinois, and would cause her to be sent back for trial, and that deceased, in reply thereto, begged him not to do it." Again, the record fails to support this statement. Mary Mallick was never asked as to the making of any loan to caveator. She testified that proponent said the testatrix was not to lend any more money at any time or he (the proponent) would fix her, he would make it bad for her.

"Mary Mallick, while testifying outside of the presence of the jury was asked whether she had heard similar questions, aside from the one in May 1923, to which she replied, 'I had heard aplenty but I have no witnesses here that heard it, and so that don't count you say, or they claim it don't count any way'."

It now appears from the record that when asked about conversations other than that of May 1923, Mary Mallick merely stated that whenever she or caveator

wanted to borrow money from their mother it was necessary for the latter to get proponent's permission. This does not seem an unnatural answer of the mother in view of the fact that it was proponent's funds that were supporting her and were the ones involved. There is no evidence as to whether such requests for loans were refused.

It may be argued that in cases of undue influence it is the subjective state of testator's mind that is controlling and not the objective test of whether certain facts actually exist; e.g., it may be possible for B who may know of A's particular phobia or doting on a particular subject to play upon it until A may be induced to make a testamentary disposition which he would not have done otherwise. But in this case, proponent's alleged domination over his mother's testamentary disposition rested upon events asserted to have actually occurred and known only to a few persons in the immediate family, and which, if known generally, would expose his mother to unfavorable criticism and possible arrest. If these alleged acts, or an essential part of them, never occurred, then the whole case of undue influence fails, because it is not claimed that testatrix was motivated from any fantasy or hallucination, but acted because of actual events in which she had been involved prior to coming to Colorado.

■ In this case therefore it is both proper and necessary to apply the objective test of whether the events occurring in the past, alleged to have been the reason for proponent's undue influence over his mother, have been proven to have occurred. In our opinion the evidence concerning the events alleged to have taken place falls so far short of that proffered, that it is insufficient to form a justifiable inference of undue influence.

■ Such an inference is further negatived by the fact that fifteen years elapsed, between the time testatrix executed the will and the date of her death, within

which to change her will had she so desired. In our former opinion we referred to this fact, and cited 28 Ruling Case Law, page 151, section 106, which reads: "Where the testator has had an opportunity to revoke his will subsequent to the operation of an alleged undue influence upon him, but makes no change in it, the court as a general rule considers the effect of the testimony of the undue influence as destroyed." This reference seems particularly apt here, where the evidence shows that testatrix was a strong-minded person; also the record contains no evidence that the proponent knew what the contents of the will were until it was found after the death of testatrix.

■ *Koch v. Garnier,* 110 Colo. 562, 136 P. (2d) 673, was cited by counsel for caveator in oral argument as the most recent in which we approved the application of the liberal rule in cases in this jurisdiction involving the question of undue influence in the execution of wills. The rule which we there approved, however, had to do with the *admissibility* of evidence. The chief point to be decided in the present case has to do with the *sufficiency* of the evidence to prove undue influence. On this phase the following cases seem to be applicable: *In re Shell's Estate,* 28 Colo. 167, 63 Pac. 413, 53 L.R.A. 387, 89 Am. St. Rep. 181; *Miller v. Weston,* 25 Colo. App. 231, 138 Pac. 424, 428; *Butcher v. Butcher,* 21 Colo. App. 416, 122 Pac. 397, 400.

The judgment is affirmed.