No. 15,787.

ESTATE OF PIERCEN.
JOHANSEN ET AL. *v.* SCHUETTIG.
(195 P. [2d] 725)

Decided May 24, 1948.   Rehearing denied July 26, 1948.

Mr. ADDISON M. GOODING, Mr. GRAHAM SUSMAN, Mr. HYMAN D. LANDY, for plaintiffs in error.

Mr. RAY MONSON, Mr. RALPH CARR, for defendant in error.

*En Banc.*

Mr. Justice Luxford delivered the opinion of the court.

This is a will contest case. Thomas Piercen, to whom we hereinafter refer as testator, died on February 22, 1945, leaving a last will and testament dated September 17, 1938, which was filed for probate in the county court of Routt county. Caveat and objections to its probate were sustained, and on appeal the district court held that the will had been properly executed and withdrew that question from the consideration of the jury. The court then submitted the questions of testamentary capacity and undue influence to the jury in two interrogatories. The jury found testator was of sound mind and memory when he made his will and that it was not executed under, or as the result of, undue influence. The court then entered judgment, admitting the will to probate. We will herein refer to Mary Schuettig, defendant in error, as proponent, and Serene Johansen, Thelma Peterson Hare, Mrs. Calvin Martin and Mrs. Ted Rickman, contestants and caveators, plaintiffs in error, will be designated as caveators.

Caveators bring the case here alleging twenty-nine points of error, with thirteen subdivisions, which we group and consider under: (1) Execution of the will; (2) burden of proof; and (3) mental capacity and undue influence.

■ (1) Execution of the Will. While on a trip to mining properties owned by him, testator stopped overnight at a hotel in Idaho Springs conducted by Mrs. Oralyn Taylor, a woman who knew him only as an occasional guest. The evening before, September 17, 1938, testator, Bert Sloas and Dave Rankin, two of his employees, and proponent, who conducted a hotel for testator at Oak Creek where he also made his home, registered at Mrs. Taylor's hotel. Testator and the two men occupied one room in which were two beds, and proponent had a room by herself. Mrs. Taylor, a witness

to the will, testified that the following forenoon, she,. at testator's request, went with him to his room to witness his signature, and that Dave Rankin, Bert Sloas and proponent were in the room at the time; that testator immediately signed his name to a paper, and she signed her name below the attestation clause; that he then told her she had witnessed his will; that in her opinion, he was at that time of sound and disposing mind and memory. She further testified that she did not see the other witnesses sign the will. Bert Sloas testified that he. signed the will as a witness in the presence, and at the request, of testator and in the presence of the other subscribing witness; that the other witnesses signed said will in his presence, in the presence of testator, and in the presence of each other; that testator acknowledged his signature attached to the will before them; that he declared it to be his last will and testament, and that in his opinion testator was at the time of sound and disposing mind and memory. The third witness, Dave Rankin, was not available. He. removed from Colorado to Ohio years before, and a death certificate was introduced in evidence showing that he had passed away. His signature was fully identified by two competent witnesses as provided in such cases by the state Session Laws of 1945, page 746, chapter 262, section 1. All three witnesses signed the attestation clause. While its wording is criticized, nevertheless, it is prima facie evidence of the matters expressed therein. *Gumon Evangelical Bethel Church v. Reith,* 327 Mo. 1098, 39 S. W. (2d.) 1057. In *La Fitte v. City of Ft. Collins,* 42 Colo. 293, 93 Pac. 1098, we said: "Prima facie evidence means evidence which is sufficient to establish the fact, unless rebutted; evidence which, standing alone and undisputed, would maintain the proposition and warrant the conclusion to support. which it is introduced." Also, in *Butcher v. Butcher,* 21 Colo. App. 416, 423, 122 Pac. 397, our court of appeals, quoting from *Allaire v. Allaire,* 37 N. J. L. 312, said: " 'But although a testimonium clause be not

indispensable, a certificate of attestation, which comprises a statement of all that is requisite to the formal execution of the instrument as a will, is in the highest degree useful with respect to the proof at the trial. It is *prima facie* evidence of all the facts stated in it. If, by reason of the death of the attesting witnesses, or their absence beyond the reach of process, or for any other cause, a foundation be laid for the introduction of secondary evidence, proof of their signatures will be evidence that what they attested, in fact, did take place (citing cases). And if the attesting witnesses, when called, admit their signatures, but through defect of memory, or for any other reason, fail to testify to the due execution of the will, it may be established on the presumption arising from the form of the attesting clause, unless there be affirmative evidence given to disprove its statements.' " In *Maikka v. Salo*, 110 Colo. 433, 440, 134 P. (2d) 723, we held that: "While an attestation clause, which here admittedly was signed by both Craig and Hawkins, is not conclusive, it is prima facie evidence of validity—*Aquilini v. Chamblin*, 94 Colo. 367, 370, 30 P. (2d) 325—and the court has a right to consider it in connection with a witness' credibility, where the latter subsequently denies that the things which he stated under oath took place. A will may be proven, even though the attesting witnesses deny their acts in respect thereto (*In Re Shapter's Estate*, 35 Colo. 578, 584, 85 Pac. 688), if it can be established by other competent testimony, and Salo's testimony here supplies that repudiated by Craig." And in *Estate of Carey*, 56 Colo. 77, 85, 136 Pac. 1175, we said, quoting from *Orser v. Orser*, 24 N. Y. 51: " 'A will, duly attested upon its face, the signatures to which are all genuine, may be admitted to probate, although none of the subscribing witnesses are able to swear, from recollection, that the formalities required by the statute were compiled with; and even although some of them should swear positively that they were not, if the other evidence warrants the infer-

ence that they were.' " In *Lenahan v. White,* 79 Colo. 347, 348, 245 Pac. 711, we stated, in holding a written instrument a valid will: "In the instant case we have a full attestation clause. Its recital that the testator signed in the presence of both witnesses is not contradicted by any evidence. The attestation clause itself is evidence of the validity of the will in this case."

Louise Piercen, former wife of testator, testified as a witness for contestants. Clearly she was biased and prejudiced against proponent, who was her sister. She was shown the purported will and asked: "Q. Can you identify that [testator's] signature? A. I wouldn't say it wasn't his signature. He hasn't wrote like that but I have a signature here that is more perfect. Q. Do you, in your opinion, say that is the genuine signature of Tom Piercen? A. No." Against this testimony is the evidence of Mrs. Taylor that testator signed the will in her presence; the testimony of Sloas that testator's signature was on the will when he signed it; the testimony of two witnesses familiar with testator's signature that the name attached to the will as the maker thereof was testator's; the genuineness of Dave Rankin's signature, the third witness to the will, evidenced by two competent witnesses; together with the attestation clause. In view of the foregoing facts we are clearly of the opinion that the question of the validity of testator's signature was one which the court properly resolved in proponent's favor. If there had been a verdict to the contrary, it " ought to be set aside." *Weston v. Livezey,* 45 Colo. 142, 100 Pac. 404; *Miller v. Farmers Bank and Trust Co.,* 82 Colo. 373, 378, 260 Pac. 112; *Neal v. Wilson County Bank,* 83 Colo. 118, 122, 263 Pac. 18.

■ (2) Burden of Proof. On this subject the court instructed the jury: "Instruction No. 3. On the issue as to whether or not Thomas Piercen, at the time of the execution of the purported will, was of sound mind and memory and had testamentary capacity, the burden of proof is on the proponent, Mary Schuettig to establish

such facts by a preponderance of evidence. On the issue of undue influence the burden of proof is upon the contestants to prove the alleged undue influence by a preponderance of the evidence." This is a correct statement of the law. As we said in *Snodgrass v. Smith*, 42 Colo. 60, 63, 94 Pac. 312: "The burden of proof is primarily upon the proponent of a will to show its execution in accordance with the requirements of the law, and that the instrument is the free and voluntary act of the testator. Likewise, the burden of proof to show undue influence is upon the one who asserts it."

■ (3) Mental Capacity and Undue Influence. The court left it to the jury under proper instructions to determine both questions which were resolved, and we think properly, in support of the validity of the will. There is evidence tending to show that testator was a drinking man, that he at times became intoxicated, but there is no evidence to indicate that this had the slightest effect on the making of his will. On the other hand, the evidence is undisputed that he had not been drinking when the will was made, and the jury properly found that he was of sound mind when he executed it.

As to the charge of undue influence, the jurors had before them undisputed evidence that proponent at the time testator's will was signed, made a will leaving her property to him in case he survived her, and it is in evidence that after testator made his will he stated regarding his property: "I willed mine to my friend and good housekeeper, Mary Schuettig," proponent, and later, "she has reared a son whom she lost and who left her a good deal of insurance and she has been good enough to use some of this money to help me pay my back taxes, which was better than $5,000." Another witness testified that he asked testator what he was going to do with his property when he died, and he replied that he had made a will giving his property to proponent. Testator died more than six and one-half years after he executed his will. The evidence clearly shows that he knew he

had made a will, to whom he had left his property, and the reasons why he had done so. There was no testimony of any undue influence exercised upon or over testator when his will was made, and the lapse of years negatives any inference that there was any such influence. As we said in *Brantner v. Papish,* 115 Colo. 133, 169 P. (2d) 326: "Such an inference is further negatived by the fact that fifteen years elapsed, between the time testatrix executed the will and the date of her death, within which to change her will had she so desired. In our former opinion we referred to this fact, and cited 28 Ruling Case Law, page 151, section 106, which reads: 'Where the testator has had an opportunity to revoke his will subsequent to the operation of an alleged undue influence upon him, but makes no change in it, the court as a general rule considers the effect of the testimony of the undue influence as destroyed.' This reference seems particularly apt here, where the evidence shows that testatrix was a strong-minded person; also the record contains no evidence that the proponent knew what the contents of the will were until it was found after the death of testatrix."

It was not error for the court to submit the case to the jury on special interrogatives. Rule 49 (a), R. C. P. Colo.

We find no reversible error in the case, and accordingly the judgment is affirmed.

Mr. Justice Jackson, Mr. Justice Stone and Mr. Justice Alter, dissent.