521 P.2d 1299 (1974)
COLUMBIA SAVINGS AND LOAN ASSOCIATION, a Colorado corporation, Plaintiff-Appellee,
v.
Sheryl A. CARPENTER, Defendant-Appellant,
v.
Grant JUDKINS, Defendant-Appellee.
No. 73-053.
Colorado Court of Appeals, Div. I.
March 12, 1974.
Rehearing Denied April 2, 1974.
Certiorari Granted May 28, 1974.
*1300 Riffenburgh, Nelson & Porter, Alan R. Porter, Fort Collins, for defendant-appellant.
Fischer, Wilmarth & Hasler, Elery Wilmarth, Fort Collins, for defendant-appellee.
Selected for Official Publication.
SMITH, Judge.
This interpleader action was filed by plaintiff-appellee Columbia Savings and Loan Association to determine the ownership of its Savings Account No. 59264-0 as between defendant-appellant Carpenter and defendant-appellee Grant Judkins. Carpenter appeals from a judgment entered in favor of Judkins. We reverse.
From September 7, 1967, to March 13, 1972, Marion Judkins, mother of appellee Grant Judkins, was the sole account holder of Savings Account No. 59264-0 at plaintiff's savings and loan company. On March 13, 1972, Marion Judkins signed a new signature card listing the names of Marion Judkins and Sheryl Carpenter, daughter of appellee Grant Judkins, as joint account holders. Following Marion Judkins' death in April of 1972, Grant Judkins, as sole heir of his mother's estate, challenged the validity of the conveyance of an interest in the account to his daughter. He premised that challenge on the grounds that either the conveyance was procured by undue influence or that Marion Judkins lacked the requisite mental capacity to make a valid inter vivos gift. Both parties assumed that the creation of the joint account would otherwise constitute a valid gift. It is not contested that the savings account will pass to appellee Judkins by intestate succession if the gift is found invalid.

I
As a preliminary matter, appellant urges that the trial court erred in denying her motion to have appellee Judkins' counsel removed from the present case. Appellant contends that she and Judkins' counsel, Mr. Wilmarth, had entered into an attorney-client relationship prior to the present dispute, and that by representing appellee in this case, the attorney was representing an interest adverse to that of a former client. The attorney, she argues, should therefore be barred from representing appellee in this case. See Wutchumna Water Co. v. Bailey, 216 Cal. 564, 15 P.2d 505. Cf. Colorado Code of Professional Responsibility Canon 4. We find no error.
Whether an attorney-client relationship existed between appellant and Mr. Wilmarth is a question of fact. The record discloses that Mr. Wilmarth had been Marion Judkins' attorney prior to her death. As a part of his responsibilities to her, Mr. Wilmarth had arranged the conveyance of a fee simple estate in Mrs. Judkins' home to appellant, with a life estate reserved to the deceased. During the period in which this transaction was accomplished, Mr. Wilmarth was in close contact with the deceased and appellant, and appellant's husband. Appellant urges that as a result of this contact, Mr. Wilmarth gained knowledge of the family's affairs which *1301 required him to withdraw as appellee's counsel in the present case. Further, appellant urges that, on appellant's behalf, Mr. Wilmarth wrote a letter to appellee representing her interests vis a vis appellee. However, there is evidence to the effect that deceased also asked Mr. Wilmarth to write the letter in issue.
There is no evidence in the record that the savings account here at issue was ever discussed by Mr. Wilmarth and appellant, nor has appellant given any indication as to how the information gained by Mr. Wilmarth might prejudice her in the present case. Finally, appellant never formally retained nor directly paid Mr. Wilmarth for any services.
In summary, the evidence is consistent with the trial court's finding that during this period Mr. Wilmarth was at all times acting as counsel for Marion Judkins and not for appellant. Therefore there is no bar against Mr. Wilmarth's representation of appellee in this action.

II
At trial to the court, appellee Judkins sought to raise a presumption of undue influence on the part of his daughter, appellant Carpenter, by proving that a confidential relationship existed between Marion Judkins and appellant Carpenter, and that appellant actively participated in the creation of the joint account. Appellant contends that the trial court erred in finding that a confidential relationship existed. We disagree.
Whether a confidential relationship existed is a question of fact, and where there is evidence in the record to support the trial court's finding, that finding will not be disturbed on review. See Johansen v. Schuettig, 118 Colo. 264, 195 P.2d 725; Davis v. Davis, 64 Colo. 62, 170 P. 208.
The record here discloses that appellant Carpenter, at the time of the conveyance, was living with deceased; that the deceased was eighty-four years of age, was in ill health, and was somewhat confused regarding her business and personal matters; and that the deceased relied upon appellant for advice and help in arranging her affairs. We believe this evidence supports the trial court's finding of a confidential relationship.

III
Having found that a confidential relationship existed between the deceased and appellant, the trial court invoked a presumption of undue influence and concluded that appellant had not overcome the presumption "by a preponderance of the evidence." Appellant urges that to dispel a presumption of undue influence arising from a finding of a confidential relationship between a donor and donee, the donee is merely required to come forward with evidence contrary to the presumption, and she asserts that the burden of proving undue influence remains on the contesting party. We agree.
The development of Colorado law regarding the effect of the presumption of undue influence arising from a finding of a confidential relationship between donor and donee has been fraught with difficulty. In Hilliard v. Shellabarger, 120 Colo. 441, 210 P.2d 441, relied upon by appellee in support of the trial court's ruling, the Supreme Court suggested that where a presumption of undue influence arises, the burden of proving that the conveyance was fair and reasonable shifts to the donee. The court there stated:
"`However, this rule [that the burden of proof in establishing fraud and undue influence is upon him who asserts it and that it must be established by clear and satisfactory evidence] must be construed in conjunction with the other rule, that fraud, in some situations, may be presumed from the relationship, or from the circumstances and condition of the parties contracting, to prevent one taking surreptitious advantage of the weakness or necessity of another, and that gross inadequacy of consideration will call for explanation and shift the burden to the party seeking to enforce an instrument *1302 and require him to show affirmatively that the price was the result of the deliberate and intentional act of the parties. Dittbrenner v. Myerson, 114 Colo. 448, 167 P.2d 15.'
. . . . . .
"It follows from the foregoing that the burden of proof upon the issue of undue influence rested upon defendants to establish that the transaction in dispute was in point of fact fair, just, and reasonable. The trial court erred in disposing of this cause upon the theory as indicated in the judgment, that the burden of proof was on the plaintiff upon the issue of undue influence."
Although the court spoke of fraud, it is clear from a reading of the case that the issue involved was the presumption of undue influence arising from a finding of a confidential relationship.
Four years later, the Supreme Court, in Lesser v. Lesser, 128 Colo. 151, 250 P.2d 130, held that a presumption of undue influence shifts only the burden of going forward with the evidence to the party seeking to uphold the conveyances, and held that the burden of proving undue influence remains on the contesting party. The court there said:
"This confidential relationship raised a presumption against the validity of the deed signed by Jacob, and placed the burden of going forward with the evidence upon the defendant. If she had offered no evidence the presumption thus raised, we have held in Zink v. Carlile, 126 Colo. 208, 248 P.2d 306, would have been sufficient to entitle plaintiff to favorable judgment. But defendant did introduce evidence rebutting that presumption....
As to what happens when evidence is produced rebutting what has been termed a presumption of invalidity of the conveyance is well expressed in Wigmore on Evidence (3rd Ed.), vol. IX, section 2491, subparagraphs 2 and 3, pages 289, 290: `2. Nevertheless, it must be kept in mind that the peculiar effect of a presumption "of law" (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion in the absence of evidence to the contrary from the opponent. If the opponent does offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule. `3. It is therefore a fallacy to attribute (as do some judges) an artificial probative force to a presumption, increasing for the jury the weight of the facts, even when the opponent has come forward with some evidence to the contrary. * * *'" (Emphasis in original.)
No reference was made to Hilliard.
In Bohl v. Haney, 28 Colo.App. 55, 470 P.2d 603, decided after the opinion announced in Lesser, this Court held that the presumption of undue influence shifts the burden of proving that the conveyance is fair and just to the donee. Reliance was placed on Hilliard, and Lesser was improvidently distinguished. However, in First National Bank v. Groussman, 29 Colo.App. 215, 483 P.2d 398, affirmed, Colo., 491 P.2d 1382, we indicated that a presumption of undue influence merely shifts the burden of going forward to the donee, citing Bohl.
From a review of these cases, we believe that Lesser v. Lesser, supra, the Supreme Court's most recent expression on this issue, establishes the proper rule regarding the effect of the presumption of undue influence. A presumption of undue influence places upon the party seeking to uphold a challenged conveyance the burden of coming forward with evidence rebutting the presumption. In the absence of any evidence to the contrary, the conveyance is presumed to have been procured by undue influence. However, where any evidence rebutting the presumption is introduced, the presumption disappears, and the case goes to the fact finder free from the presumption. Lesser v. Lesser, supra.
*1303 To the extent that there is a conflict between Hilliard and Lesser, the more recent Lesser case must be considered to overrule sub silentio the rule announced in Hilliard, and the Lesser burden of going forward with the evidence must be deemed present Colorado Law. Our decision in Bohl v. Haney, supra, insofar as it is in conflict with Lesser, is expressly overruled.

IV
Finally, appellant maintains that the trial court erred in finding that Marion Judkins lacked sufficient mental capacity to make the contested gift. We agree.
On the basis of the evidence, the trial court concluded that on March 13, 1972, the decedent lacked the mental capacity "to manage, care for or conserve her estate, and did not understand the consequences of the execution of the said joint signature card ...." This conclusion was based on the trial court's findings that decedent was frequently hospitalized just prior to her death; that one doctor testified that few persons in their eighties can analyze business details well; that in January and February, 1972, decedent had difficulty in balancing her checkbook and often neglected to write down the amount and to whom the checks were drawn; and that decedent frequently changed her mind regarding business and personal matters during March and April.
The evidence on which these findings are based is not disputed, and the sole issue here concerns the legal significance of these findings. Under these circumstances, this court, while bound by the trial court's findings, is not bound by the ultimate conclusions drawn therefrom. See Weed v. Monfort Feed Lots, Inc., 156 Colo. 577, 402 P.2d 177.
Although we find no Colorado cases dealing with the issue of mental capacity to make an inter vivos gift, we believe that those cases defining testamentary capacity are applicable. Testamentary capacity consists of mentality and memory sufficient to understand intelligently the nature and purpose of the transaction, to comprehend generally the nature and extent of property to be disposed of, to remember who are the natural objects of the testator's bounty, and to understand the nature and effect of the desired disposition. Cunningham v. Stender, 127 Colo. 293, 255 P.2d 977.
We do not believe that the findings of the trial court or the evidence upon which they were based justify the conclusion that these elements were absent. The issue is not whether the decedent was capable of handling business affairs, but whether she had sufficient mental capacity to make the gift at issue. The mere fact that a donor is of advanced age, see Lusk v. Daugherty, 61 N.M. 196, 297 P.2d 333, and the fact of illness, see White v. White, 149 Colo. 166, 368 P.2d 417, are, in themselves, insufficient to render such donor incompetent to make a valid gift. With regard to the trial court's finding that decedent changed her mind relative to business decisions and that she neglected to keep her checkbook in order, appellee on cross-examination admitted, in substance, that she had always demonstrated a tendency to change her mind, but in his opinion that decedent could, during the time in question, engage in a simple business transaction. He testified that she had always relied upon her husband, and later upon appellee, to take care of the actual mechanics of her business affairs. Furthermore, appellee, as well as others, testified that decedent was aware of her surroundings and that she was quite able to recognize members of her family and her friends and that she was able to converse intelligently with them. This is in essence all of the evidence contained in the record relative to this issue.
Viewing the evidence in the light most favorable to appellee, we can find no evidence sufficient to support a conclusion that the decedent was incapable of understanding the nature of the transaction, comprehending the nature of the gift, identifying the natural objects of her bounty, or *1304 understanding the nature and effect of the transaction.
Inasmuch as the only assertion of undue influence arose by virtue of the presumption, the evidence in our view being insufficient to support an independent finding of undue influence, and having disposed of the issue of competency, we reverse the judgment of the trial court.
SILVERSTEIN, C. J., concurs.
RULAND, J., dissents.
RULAND, Judge (dissenting):
I respectfully dissent. I agree with the majority opinion in the analysis of prior decisions relating to the presumption of undue influence. However, I interpret the trial court's findings to be that, irrespective of the presumption, it found by a preponderance of the evidence that decedent made the subject gift as a result of the undue influence of appellant. In my view there is sufficient evidence in the record to support that finding. I would therefore affirm the judgment.