No. 16,322.

SARVAS, ADMINISTRATOR *v.* MORRELL ET AL.

(220 P. [2d] 367)

Decided June 12, 1950.

Mr. A. K. ERICKSON, Mr. DON B. OLIVER, for plaintiff in error.

Mr. WILLIAM W. GAUNT, Mr. CHARLES T. BYRNE, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE refer to the parties as they appeared in the trial court, where plaintiff in error was plaintiff and defendants in.error were defendants.

The action was instituted in the district court of Adams county by plaintiff as conservator of the estate of Amanda Gurts. The complaint alleges, in substance, that on the 12th day of February, 1947, Amanda Gurts was the owner of real estate in Adams county, of the value $6,000.00, and on said date she executed a deed purporting to convey the said real estate to the defendant Freda Morrell; that at the time of the execution of said deed Amanda Gurts was eighty-three years of age,

infirm and very ill, and without sufficient mental capacity to attend to business transactions or to comprehend the nature or purport of her act in signing the deed in question; that the deed was secured without consideration, and by the exercise of undue influence on the part of the defendant Freda Morrell.

Amanda Gurts was adjudicated a mental incompetent on the 20th day of March, 1947, and plaintiff was appointed her conservator. On August 28, 1947, Amanda Gurts died and plaintiff was appointed administrator of her estate, and this action was continued by him as administrator. The defendant, Freda Morrell, entered no appearance in the action until April 6, 1948, at which time she filed an answer admitting the execution and delivery of the deed, and that decedent was eighty-three years of age at the time of the execution thereof. Defendant denied that said decedent lacked the mental capacity to execute the deed, and denied that any undue influence had been exercised in its procurement.

The cause was tried to the court and on August 20, 1948, the trial court entered its "findings and judgment," which contained, inter alia, the following: "The Court now having given consideration thereto and being fully advised finds the issues in favor of the defendant Freda Morrell and against the plaintiff. The testimony tends to show that the conveyance made to Freda Morrell was made to her for the use and benefit of her son Georgie, but whether or not the said Freda Morrell holds said real estate in trust for Georgie or for anybody else is a matter which we do not have to determine in this case."

The court entered judgment dismissing plaintiff's complaint, and plaintiff seeks review and specifies five points upon which he relies for reversal of the judgment, to wit: "1. The evidence overwhelmingly discloses that the decedent was not of sound and disposing mind and memory at the time prior to and subsequent to the execution of the purported conveyance; that there

was no consideration or that the consideration, if any, for the conveyance was so inadequate as to shock the conscience. 2. That the decedent did not know or comprehend the nature or effect of the transaction in question, namely, the conveyance of her property. 3. That the evidence discloses that the purported deed did not carry out the intention of the decedent grantor with reference to the grantee and is therefore void. 4. The Court erred in its findings of fact, namely: ' * * * that the conveyance made to Freda Morrell was made to her for the use and benefit of her son Georgie * * * ' and determining as a matter of law that the complaint be dismissed. 5. The Court erred in failing to admit plaintiff's Exhibit 'C'."

## Questions to be Determined.

First: *Is there competent evidence sufficient to support the judgment upon the question of the mental capacity of Amanda Gurts?*

█ This question is answered in the affirmative. Dr. Glenn Lamb was acquainted with Mrs. Gurts from November 1946, until her death, and treated her professionally during that period. In February 1947, he saw her on two occasions. He testified that she was a person of positive will and knew what she was doing, and that on February 12, 1947, she was fully competent to execute a deed conveying property. Theoren C. Smith, pastor of a church in the neighborhood where Mrs. Gurts resided, was a frequent visitor to her home and was present when the questioned deed was signed. He stated that she was very capable of managing her own affairs, unassisted by anybody. Other witnesses, with full opportunity to observe the conduct of Mrs. Gurts over extended periods of time, expressed the opinions that she was competent to handle her business affairs. Although this evidence is disputed by witnesses who expressed opinions to the contrary, it is ample to sup-

port the judgment, and a judgment thus supported will not be disturbed on review.

■ Second: *Assuming the existence of a fiduciary relationship between the parties to the deed, or a status of inequality of footing between them, constituting the grantee a dominant party and the grantor a servient party, can we say as a matter of law that the presumption of undue influence arising therefrom was not sufficiently rebutted to warrant the judgment?*

This question is answered in the negative. Plaintiff argues at length that the lack, or inadequacy, of consideration tends to indicate fraud and undue influence, and that, "Where a fiduciary relationship exists, Court of equity will presume confidence placed and influence exerted. Where the facts point towards and indicate mental weakness, duress, lack of freedom of action and a lack of proper understanding of the nature and effect by the grantor of his conveyance, then the presumption is against the propriety of the transaction, and the Courts will refuse judicial sanction to an instrument conveying property until fully satisfied of the fairness of the transaction and that the instrument is the intelligent act of the person executing it."

Plaintiff relies on *Hilliard v. Shellabarger*, 120 Colo. 441, 210 P. (2d) 441, and the cases there cited, in which this court recognized the rule requiring the grantee in a deed, who occupies a position of fiduciary relationship with an aged and infirm grantor, to assume the burden of proving the transaction to have been in fact "fair, just and reasonable," and to overcome the presumption of undue influence which arises out of the relationship between the parties. *Hilliard v. Shellabarger, supra,* was a case in which the record affirmatively disclosed that the trial court did not recognize this rule in making determination of the facts. The cause was reversed with direction to reconsider the evidence "with due regard to the correct rule governing the burden of proof." This

court did not determine in that case that as a matter of law the deed there questioned was void.

Whether the presumption of undue influence has been rebutted in a given case depends upon the facts and circumstances there present, and involves the exercise of the sound discretion of the trial court, or jury, in weighing the evidence. If there is competent evidence tending to rebut the presumption of invalidity which arises in cases of this kind, a determination by the fact-finding authority upon this question will not be disturbed on review. Equity does not deny the possibility of valid transactions by parties between whom a fiduciary relationship exists. As said in Pomeroy's Equity Jurisprudence, section 957: "The transaction is not necessarily voidable, it *may* be valid; but a presumption of its invalidity arises, which can only be overcome, if at all, by clear evidence of good faith, of full knowledge, and of independent consent and action."

It would unnecessarily lengthen this opinion to mention all the evidence in this case tending to overcome the presumption of invalidity. Generally, however, there was evidence tending to establish the following facts: (1) That defendant and her family came to live with Mrs. Gurts at the request of the latter who was an old age pensioner living alone; (2) That defendant had lived with and cared for Mrs. Gurts for a year prior to the date of the deed, during which time Mrs. Gurts had become fond of defendant and was particularly concerned about the welfare of a crippled child of defendant; (3) That the questioned deed reserved a life estate to Mrs. Gurts; (4) That the deed was prepared by an attorney selected by Mrs. Gurts, who had previously represented her; (5) That at the time the deed was drawn, signed, and delivered, in the home of Mrs. Gurts, several of her friends and neighbors of long standing were called in to hear her declarations concerning her purpose and desires regarding the property, and to witness the whole transaction; (6) No heirs at law

attended the funeral of Mrs. Gurts, although notified thereof by defendant. The record is silent concerning the identity or number of the heirs at law, and no facts are shown from which it might reasonably appear that natural ties of intimacy founded on blood relationships would ordinarily claim the bounty of the deceased above the kindly feeling of Mrs. Gurts for the defendant and her crippled child.

These circumstances were unquestionably considered by the trial court sufficient to rebut the presumption of invalidity. As a matter of law we cannot say they were insufficient to overcome that presumption. *Mehlbrandt v. Hall*, 121 Colo. 165, 213 P. (2d) 605.

■ Third: *Does the fact that the seven-year-old crippled child of the defendant was not named as grantee in the deed, under the circumstances here present, require a reversal of the judgment?*

This question is answered in the negative. It is clear that Mrs. Gurts was concerned with the crippled child of defendant. The boy, Georgie, was a victim of infantile paralysis. Mrs. Gurts had, prior to the date of the deed, expressed an intention to give her property to Georgie. At the time the deed was prepared, signed, and delivered, she said she was "going to give it to Georgie." Reverend Smith, the neighborhood minister, testified: "Q. I believe that you stated that you talked with Mrs. Gurts concerning her property numerous times? A. Yes, sir. Q. I believe you stated that, to use your words, 'She wanted Georgie Morrell to get the property'? A. Yes, sir. Q. When was the last time she stated that to you prior to the 12th of February, 1947? A. Not over a week."

He further testified, in substance, that the lawyer explained to Mrs. Gurts that the property was placed in the name of Mrs. Morrell for Georgie because of his crippled condition, and that this explanation was "stated very clearly in the bedroom before it was ever signed."

He testified further that Mrs. Gurts said, "That is what I want."

Under these circumstances the trial court committed no error in refusing to set aside the deed upon the asserted ground that the wishes of the grantor were not carried out by the deed because of the omission of the boy's name as grantee therein.

Fourth: *Did the trial court err in excluding from evidence Exhibit "C" offered by the plaintiff?*

■ Exhibit "C," offered by plaintiff, was the file of the district court of Adams county in cause No. 4522 in said court, entitled Amanda Gurts, plaintiff v. Peter J. Carlson and Mrs. Peter J. Carlson, defendants. The complaint in said action sought a decree quieting title to real estate and a cancellation of contract and deeds relating to the same property involved in the instant cause. Counsel for plaintiff, contending for the admission of the complaint in evidence, stated: "I explained to the Court that I want this matter introduced to the Court for the purpose of showing what appeared on public record, public knowledge as to the decedent's mental condition as far back as 1944. I want to show that particularly with reference to Rule 11 of the Rules of Civil Procedure, which provides that the signature of an attorney constitutes a certificate by him that he has read the pleading, that to the best of his knowledge, information, and belief there is good ground to support it, and that it is not interposed for delay."

The court committed no error in excluding this complaint from evidence. It was a hearsay document. Its only possible use as evidence in this action would be for purposes of impeachment in the event the author of the complaint had testified, in this cause, to facts at variance with the matters contained in the document.

We find no merit in the points relied on for reversal of the judgment, and it is accordingly affirmed.

MR. JUSTICE HOLLAND not participating.