No. 16,779.

ZINK, EXECUTRIX *v.* CARLILE ET AL.
(248 P. [2d] 306)

Decided August 18, 1952.   Rehearing denied September 29, 1952.

Messrs. BELLINGER & FARICY, for plantiff in error.

Messrs. SEAVY & SEAVY, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will herein refer to the parties by name or as they appeared in the trial court, where plaintiff in error was plaintiff, and defendants in error were defendants.

Prior to April 12, 1944, Carrie M. Zink, B. A. Carlile, C. B. Carlile and Hatta C. Whitfield were partners in

the ownership of certain real and personal property, in the income from which each of said partners had shared equally. They were the sons and daughters of one James N. Carlile, from whose estate the assets of said partnership had their origin. On April 12, 1944, Carrie M. Zink died leaving as her sole and only heir-at-law her husband, Norbert Zink. Prior to her death all of the partnership assets had been transferred to C. B. Carlile and B. A. Carlile as trustees for the partners, and said trust relationship existed at all times pertinent to the issues in this cause.

On April 19, 1944, Norbert Zink entered into an agreement in which he was the first party, and C. B. Carlile, B. A. Carlile and Hatta C. Whitfield are described as the second parties. By the terms of this contract it was provided, inter alia:

"Now, therefore, in consideration of the promises and agreements of second parties hereinafter contained to be kept and performed by them, first party hereby and herein renounces, disclaims and acknowledges, for himself, his heirs and administrators, that he has no claim in or to any part or share of the property hereinbefore described and that the same be and hereby is declared to be the property of second parties, their heirs and administrators, in such proportion as may be determined between themselves and that he will not hereafter assert or attempt to assert any claim to any part thereof.

"In consideration of the promises hereinbefore made by first party, second parties, for themselves, their heirs and administrators, covenant and agree:

"1. That first party may, during the balance of his natural life, occupy the real premises heretofore occupied by himself and his deceased wife, Carrie M. Zink, without the payment of any rental therefor.

"2. That they will, during the balance of the natural life of the said first party, pay or cause to be paid to him annually a sum equal to one-fourth (¼) of the net pro-

ceeds of the income of the property hereinbefore described.

"3. That they will, in the event the one-fourth (¼) share in and to the above property owned by the said Carrie M. Zink, causes her estate to exceed the statutory allowance to a husband without the payment of an inheritance tax, pay or cause the same to be paid without cost to said first party.

"In the event there should be any state or federal taxes due on the transaction herein mentioned, second parties, for themselves, their heirs and administrators, agree to save first party harmless therefrom.

"Each of the parties hereto has entered into the foregoing agreement with a full and complete understanding of his or her legal rights in and to the subject matter herein mentioned and has executed this agreement freely and voluntarily without coercion or undue influence of any kind or nature."

On April 21, 1947, C. B. Carlile, B. A. Carlile and Hatta C. Whitfield, as first parties, entered into a second contract with Norbert Zink, as second party, the effect of which was to dissolve the partnership between the first parties and to authorize distribution of the personal property so that one-third thereof should thereafter be owned by each of the first parties individually. This instrument contained, inter alia, the following provisions:

"Whereas, by an agreement entered into on April 19, 1944, the first parties hereto covenanted and agreed with second party that he might occupy the real premises known and described as 44 Carlile Place, Apartment 1, Pueblo, Colorado, during the balance of his natural life without the payment of any rental therefor, and that first parties during the balance of the natural life of second party would pay or cause to be paid to him annually a sum equal to one-fourth (¼) of the net proceeds of the property hereinbefore described.

"Now, therefore, it is mutually agreed that the part-

nership now existing between first parties be and the same hereby is dissolved, and each of the first parties acknowledges receipt of his or her proportionate share of the assets of said partnership, except the real estate herein described, and each of said parties agrees that the record title to said real estate shall remain as the same now is, and that B. A. Carlile shall be and remain the record owner thereof for the use and benefit of first parties hereto.

"That second party during the remainder of his natural life shall occupy the real premises known and described as 44 Carlile Place, Apartment I, Pueblo, Colorado, without the payment of any rental therefor, and shall, from the net income of the real estate herein described, receive an amount equal to one-fourth ($\frac{1}{4}$) of the net proceeds of the income of the property described herein so long as the same shall be sufficient.

"It is further mutually agreed between the parties hereto that that agreement entered into on April 19, 1944, is hereby abrogated and superseded by the terms and provisions hereof."

C. B. Carlile, one of the trustees above mentioned, died, and Hilda E. Carlile was appointed executrix of his estate. The case as presented in this court is a consolidation of two cases tried in the district court of Pueblo county. One of them originated in the county court on a claim filed by Norbert Zink against the estate of C. B. Carlile in which, as the sole heir-at-law of Carrie M. Zink deceased, he sought to recover all property held by said deceased as trustee for Mrs. Zink. This claim was denied by the county court. An appeal was taken to the district court where it was consolidated with the cause already pending in that court in which B. A. Carlile, the other trustee, was defendant. The last mentioned case was filed by Norbert Zink on October 13, 1948, against B. A. Carlile, individually and as trustee. The complainant sought an accounting of property, formerly belonging to Carrie M. Zink, which was in the hands of

defendant as trustee. It was alleged that Norbert Zink was lawfully entitled to all the property, and the income therefrom, which formerly belonged to his deceased wife.

In his answer, B. A. Carlile set forth the contracts hereinbefore quoted, and placed in issue the right of Norbert Zink to share by inheritance in any property of his deceased wife.

On May 2, 1949, Norbert Zink died, and thereafter Grace Zink, as executrix of his estate, was substituted in his place as a party. She filed a reply to the answer of B. A. Carlile in which it was alleged that when Norbert Zink executed the contracts disclaiming his inheritance, a fiduciary relationship existed between the parties thereto; that Norbert Zink was beneficiary; and C. B. Carlile and B. A. Carlile were trustees. In said reply, facts were alleged questioning the fairness of the contracts, and raising the issue of undue influence in connection with the execution thereof. The consolidated case came on for trial in the district court on April 9, 1951; the court thereafter made findings of fact and conclusions of law, and entered judgment dismissing both cases. Grace Zink, as executrix of the estate of Norbert Zink, seeking a reversal of this judgment, brings the case here by writ of error.

Upon the trial Grace Zink offered exhibits establishing: (1) her right to be substituted as a party in place of Norbert Zink; (2) that Norbert Zink was the sole heir of Carrie M. Zink, deceased; (3) that the personal property in the trust estate was of the value of $124,-447.50; (4) that the income therefrom since the death of Carrie M. Zink was $27,962.55; and (5) that the value of the real estate held in trust was $7,500.00.

Upon cross-examination of defendant B. A. Carlile, it was established that at the time of Carrie M. Zink's death her two brothers, C. B. Carlile and the witness, held in trust for her a one-fourth interest in the real and personal property mentioned above; that no ac-

counting ever was made for the interest of Carrie M. Zink in the trust property either to her estate or to Norbert Zink or to his estate; and that subsequent to the death of Carrie M. Zink all of the property which had theretofore been held in trust had been transferred, one-third to B. A. Carlile, one-third to Hilda E. Carlile as executrix of the estate of C. B. Carlile deceased, and one-third to Hatta C. Whitfield.

Defendants' Exhibits 1 and 2, consisting of the contracts above mentioned, under which Norbert Zink relinquished his inheritance from his deceased wife, were introduced in evidence, and plaintiff rested her case. Thereupon the attorney for B. A. Carlile moved the court for dismissal upon the ground that plaintiff had failed to establish the allegations of the complaint filed in the district court, and had failed to make any showing that she was entitled to the claim as filed in the county court by her testator. The defense thereupon renewed the motion to dismiss, and rested.

The findings of the trial court contained, inter alia, the following:

"3. That by the execution of defendant's Exhibits 1 and 2 the said Norbert M. Zink divested himself of all of his right, title, interest and ownership in and to the subject matter of case number 32432 and case number 33438.

"4. That the plaintiff in case number 32432 has failed to establish any of the allegations of her reply intended and designed to show defendant's Exhibits 1 and 2 to be invalid and ineffective.

"5. That defendant's Exhibits 1 and 2 operate as a full and complete bar to the right of recovery, if any, of the claim originally filed by Norbert Zink in the Estate of Charles B. Carlile, deceased, case number 33438."

Norbert Zink was seventy-eight years of age at the time Exhibit 2 was executed by him, and eighty-one years of age at the time Exhibit 1 was executed. Exhibit 2 was executed by him seven days following the

death of his wife. He was a special agent for a railroad company during his active years prior to retirement. The record does not disclose how long he had been retired. C. B. Carlile and B. A. Carlile were bankers with approximately fifty years of active banking experience.

From the foregoing we summarize the issues as follows: Grace Zink, as plaintiff, pleads and proves a trust, and as beneficiary thereof prays for an accounting by the trustees. The answer and proof of the trustees admit the trust, but seek to avoid an accounting by reason of Exhibits 1 and 2 which purport to evidence a gift from the beneficiary to the trustees of all the beneficiary's interest in the corpus of the trust estate. Plaintiff in her reply, alleges all the necessary facts to raise the issue of undue influence in connection with the execution of Exhibits 1 and 2.

Questions to be Determined.

*Did the trial court err in disposing of the case upon the theory, clearly indicated by the findings, that plaintiff had failed to establish any of the allegations of her reply intended and designed to show that the contracts, Exhibits 1 and 2, were invalid and ineffective?*

The question is answered in the affirmative. Only one conclusion can be reached upon a consideration of all the evidence before the court, namely, that a fiduciary relationship existed between C. B. Carlile and B. A. Carlile, as trustees, and Norbert Zink as beneficiary, when defendants' Exhibits 1 and 2 were executed. On the face of these exhibits it is clear that the trustees attempted to secure for themselves and their sister, benefits shown by the evidence to be worth approximately $40,000.00, all of which, under the law, belonged to Norbert Zink. The consideration received by Norbert Zink for the relinquishment which he executed, was negligible and grossly inadequate. In fact it is a fair inference that there was no consideration received by him other than that to which he was legally entitled in his own right. He was the absolute owner of a one-fourth

interest in the real estate, part of which he was permitted to occupy rent free under the contracts.

After the execution of these contracts, under which the trustees of Norbert Zink were thus enriched, the beneficiary questioned the fairness of the transaction and sought to recover the property relinquished. Under such circumstances the law presumes that the transaction was procured as a result of undue influence on the part of the trustees, and places upon them the burden of repelling this presumption of illegality by evidence proving the transaction to have been in actual fact fair, just and reasonable. In the early case of *Lathrop v. Pollard*, 6 Colo. 424, our court announced the rule as follows: "And it is now announced as the 'better doctrine, that a trustee may purchase from the *cestui que trust*, or accept a benefit from him, but the transaction must be beyond suspicion; and the burden is on the trustee to vindicate the bargain or gift from any shadow of suspicion, and to show that it was perfectly fair and reasonable in every respect, and courts will scrutinize the transaction with great severity.' 1 Perry on Trusts, §428 and note 1; Hill on Trustees, *537, note *y*."

In *Anderson v. Lindgren*, Adm'r, 113 Colo. 401, 157 P. (2d) 687, this court stated, "Plaintiffs contend that where a fiduciary relation exists, the burden rests upon the fiduciary to show that no advantage was taken. This is correct." In *Hilliard, Adm'r v. Shellabarger*, 120 Colo. 441, 210 P. (2d) 441, the doctrine was discussed at length, and we there held that one who endeavors to retain benefits received from another toward whom he stood in a position of trust, has the burden of proof to overcome the presumption of undue influence. The judgment in that case was reversed for the reason that it was apparent that the trial court disposed of the action upon the theory that the burden of proof rested upon the beneficiary to establish the exercise of undue influence after the fiduciary relationship was shown to be present. We said, in reversing the judgment, "The trial court

erred in disposing of this cause upon the theory as indicated in the judgment, that the burden of proof was on the plaintiff upon the issue of undue influence." The same situation is shown by this record and the judgment accordingly is reversed and the cause remanded for further proceedings consistent with these views.

MR. JUSTICE CLARK and MR. JUSTICE KNAUSS dissent.

MR. CHIEF JUSTICE JACKSON not participating.