No. 17,803.

R. J. ARNOLD, EXECUTOR, ETC. *v.* FRED F. ABERNETHY.

(307 P. [2d] 1106)

Decided February 18, 1957.   Rehearing denied March 25, 1957.

Mr. JOHN T. DUGAN, Mr. NATHAN I. GOLDEN, for plaintiff in error.

Mr. M. W. Spaulding, for defendant in error.

*In Department.*

Mr. Chief Justice Moore delivered the opinion of the Court.

We will herein refer to the parties by name.

One Mattie Davis died February 12, 1952, at the age of seventy-seven years, and R. J. Arnold was appointed, and qualified, as executor of her estate. Fred F. Abernethy filed ten separate claims against the estate. The claims were resisted by Arnold and after trial in the county court there was an appeal to the district court where by verdict of a jury six claims were denied and four claims, based upon promissory notes, were allowed, resulting in the entry of judgment in favor of Abernethy in the sum of $9,240.80. Arnold, seeking review of the judgment brings the cause to this court by writ of error.

No cross error is assigned by Abernethy in connection with the rejection of the first six claims and we accordingly limit our study to the record as applicable to the promissory notes. Testimony consisting of 2230 folios was introduced and some three hundred exhibits were tendered, much of which might well have been omitted in the interest of clarity and orderly procedure.

Abernethy became acquainted with deceased Mattie Davis very shortly after the death of her husband in April, 1947. She was not in very good health and lived in a small apartment which was directly across the street from a drug store and grocery store. She owned her own furniture; paid cash for the things she bought; owed no bills; owned no intangibles and her business affairs consisted only in supplying her needs from day to day. She received social security payments following the death of her husband, and realized $16,000.00 from the sale of a farm in Illinois, which money was transferred

to a Denver bank. Thus there was sufficient to provide for her needs.

Shortly after becoming acquainted with deceased, claimant commenced "taking care of her affairs." He became her "attorney-in-fact," and was referred to by deceased as one in whom she reposed trust and confidence. There can be no question whatever that at all times pertinent to the issues herein, Abernethy was in a dominant position and Mattie Davis was in a servient position in the relationship which existed between them. That Abernethy acted at all times in a fiduciary capacity in "taking care of" Mattie Davis appears unquestionably from this record, and his actions must be adjudged under the well-established rules of law applicable to cases of that kind.

The promissory notes upon which Abernethy recovered judgment were as follows:

(1) November 29, 1947 — note payable to Abernethy "account cash, services and other valuable considerations" for "$300.00 and legacy by my will & $300.00," interest at 8% per annum, plus attorney's fees, due two years from date.

(2) November 4, 1948 — note payable to Abernethy for $1,000.00 with interest at 8% for "value received" provides for confession of judgment, with $150.00 attorney's fees. Due one year.

(3) December 10, 1948 — note payable to Abernethy for $1,000.00 with interest at 8%, "account of cash, services and other valuable considerations," due one year from date, with provisions for attorney's fees, etc.

(4) August 16, 1949 — note for $3,970.00 "on account of cash, services and other valuable considerations," due six months from date with interest at the "legal rate," payable to Abernethy ("to him as my Attorney in Fact"), and $50.00 attorney's fee.

At this point it is well to note that other claims aggregating $2,100.00 were filed by Abernethy for alleged "services, work and labor" performed by him; and that

other claims totaling $726.19 were alleged to be due for medicines, groceries, clothing, etc., allegedly purchased and paid for by Abernethy for benefit of Mrs. Davis. These claims were rejected. Thus Abernethy, the fiduciary, in his transactions with deceased between November 29, 1947, and August 16, 1949, received from her promissory notes for the total principal amount of $6,270.00. He also received a new automobile which was purchased for him by deceased.

In 1951 Mrs. Davis and Abernethy parted company. There is ample evidence to sustain the conclusion that there was bitterness between them and that it was necessary for Mrs. Davis to secure the services of an attorney in an attempt to secure from Abernethy the return of bankbooks and other documents belonging to her, which he refused to return. Notwithstanding that all the promissory notes relied on by Abernethy were past due long before the death of Mrs. Davis, no demand for payment during her lifetime was shown, and as far as the record discloses they were never mentioned or brought forward at any time until the claims were filed in September, 1952.

The promissory notes were introduced in evidence and there was sufficient testimony concerning the signatures of Mrs. Davis to warrant the jury in finding that they were signed by her. No other showing was made with reference to the notes and the record is silent as to the circumstances under which they were executed and delivered.

At the close of the case made by Abernethy, counsel for the estate moved for dismissal of the claims. In so far as the said motion relates to the promissory notes, which alone are involved at this time, the grounds urged for dismissal were that claimant was a fiduciary and the notes represented benefits to him resulting from transactions which he had with his beneficiary, and "that those transactions must be shown to be just and fair and reasonable, and in this case it is the contention of the estate

the claimant has not sustained the burden of proof in that respect." Numerous objections were made by counsel to instructions given to the jury and to various rulings of the court during the trial; however we deem it unnecessary to discuss them for the reason that resolution of the questions raised by the motion to dismiss, made at the conclusion of the evidence offered by Abernethy, disposes of this controversy with finality.

## Questions to be Determined.

*Where a person's relations to another are such as to place him in the position of a fiduciary under which he is obligated to act in the protection of the estate and interests of his beneficiary; where said fiduciary files claims against the estate of the beneficiary based upon promissory notes payable to his order which were executed and delivered by the beneficiary during the existence of the fiduciary relationship; and where all of said notes were long past due prior to the death of the beneficiary and no demand for payment was made even after the fiduciary relationship was terminated and the fiduciary charged with misconduct; does the law raise a presumption that the notes in question were obtained by undue influence, or fraud, and thus require that such fiduciary overcome the presumption of invalidity by presenting evidence proving the transactions evidenced by the notes to have been in fact fair, just and reasonable?*

The question is answered in the affirmative. There is no evidence in this record which remotely tends to refute the existence of a fiduciary relationship between Abernethy as dominant party and Mrs. Davis as the servient party. His own evidence establishes this relationship of trust and confidence reposed in him by Mrs. Davis at all times within which he acquired the notes in question.

There can be no doubt whatever concerning the applicable law. We need do no more than refer to the opinion of this court in *Zink v. Carlile*, 126 Colo. 208,

578

248 P. (2d) 306, in which we quoted from *Lathrop v. Pollard,* 6 Colo. 424, as follows:

"And it is now announced as the 'better doctrine, that a trustee may purchase from the *cestui que trust,* or accept a benefit from him, but the transaction must be beyond suspicion; and the burden is on the trustee to vindicate the bargain or gift from any shadow of suspicion, and to show that it was perfectly fair and reasonable in every respect, and courts will scrutinize the transaction with great severity.' 1 Perry on Trusts, §428 and note 1; Hill on Trustees, *537, note *y.*"

In *Hilliard, Adm'r. v. Shellabarger, et al.,* 120 Colo. 441, 210 P. (2d) 441, we held, in substance, that one who endeavors to retain benefits received from another toward whom he stood in a position of trust, has the burden of proof to overcome the presumption of undue influence. The fact that in the instant case the "benefit" sought to be retained by Abernethy took the form of four promissory notes does not operate to relieve him of the burden of proof to overcome the presumption of undue influence.

In this case each of the parties contend that the burden of proof was on the other with relation to the question of undue influence and fraud. Counsel for Abernethy in his brief argues that under the negotiable instruments law each of the notes was presumed "to have issued for a valuable consideration" and that when they were received in evidence "claimant made a prima facie case." We quote from his brief the following:

"Neither the existence of undue influence amounting to fraud, nor either undue influence or fraud, was shown by the estate or otherwise, either by direct or circumstantial evidence, let alone the exercise by claimant of either or both thereof. The estate wholly failed to sustain the burden of proof which rested upon it to establish its defense of want of consideration, by the preponderance of the evidence or otherwise.

"There was no evidence adduced at the trial pertain-

ing to any event or transaction or understanding had between the decedent and the claimant at the time of the execution and delivery of these particular Promissory Notes Ex. C-37, or either of them. Hence there was no evidence of undue influence amounting to fraud, or undue influence or fraud; exercised by the claimant upon the decedent at such time or times or with reference to the consideration or procurement of any particular note or notes, Ex. C-37."

Thus he admits that if the law placed upon him the burden of overcoming the presumption of undue influence, he failed to produce evidence of any kind to overcome such presumption. The general presumptions created by provisions of the negotiable instruments law dealing with presumption of delivery, date, consideration and liability of maker of promissory notes (C.R.S. '53, 95-1-11, 95-1-16; 95-1-24; 95-1-25; 95-1-28; and 95-1-60) are overcome by the specific presumption arising out of the special circumstances of this case. *Meginnes v. Copeland, et al.,* 179 Iowa 563, 160 N.W. 50. One occupying the position of a fiduciary cannot acquire a benefit from his *cestui que trust* in the form of a promissory note, and thereby occupy a more favorable position than he would enjoy if the benefit acquired was in the form of a deed, a contract, money or other property. The form of the benefit is immaterial and he who seeks to retain it must overcome, by evidence, the presumption of undue influence with which the transaction is tainted because of the existence of the fiduciary relationship.

In the instant case claimant did nothing more than introduce the notes when his own evidence fully established the relationship which gave rise to the presumption of undue influence. He rested his case. He had not met the burden of proof which rested upon him and the motion of counsel for Arnold that the claims based upon the notes be dismissed was good and should have been sustained.

In *Zink v. Carlile, supra,* the judgment was re-

580

versed and after the remittitur was issued further proceedings were instituted and the case again came before this court. *Carlile v. Zink,* 130 Colo. 451, 276 P. (2d) 554. There, as here, each party contended that the burden of proof rested upon the other. The opinion in that case controls the mandate to issue in the case at bar. Abernethy had full opportunity to establish his claims based on the notes by whatever evidence he deemed sufficient to accomplish that result. He rested his case. Motion was made to dismiss the claim for failure of proof. The court erred in denying that motion.

Judgment is reversed and the cause remanded with directions to dismiss the claims and enter judgment in favor of Arnold.

MR. JUSTICE KNAUSS, MR. JUSTICE SUTTON and MR. JUSTICE DAY concur.