Mary K. KRUEGER, personal representative of the Estate of Iver M. Villa, a/k/a Iver Martin Villa, and a/k/a Martin Villa, deceased, Plaintiff–Appellant,

v.

Marlyn L. ARY, Defendant–Appellee.

No. 06CA2142.

Colorado Court of Appeals, Div. V.

Dec. 13, 2007.

Certiorari Granted May 27, 2008.

Hanes & Schutz, LLC, Timothy J. Schutz, January D. Barrett, Colorado Springs, CO, for Plaintiff–Appellant.

James D. Osborne, Craig, CO, for Defendant–Appellee.

Opinion by Judge LOEB.

In this action for the rescission of gifts, plaintiff, Mary K. Krueger, acting as personal representative of the estate of decedent, Iver M. Villa, appeals the judgment entered upon a jury verdict in favor of defendant, Marlyn L. Ary. We affirm.

## I. Background

Ary began working for decedent in 1989 as a part-time housekeeper. As decedent's health declined, Ary became more involved with decedent's personal and business affairs. In 2003, Ary became heavily involved in his personal affairs when she became his primary caregiver.

From 2003 until he passed away in 2005, decedent's vision declined, and he needed assistance to identify people, to drive, and to read. Ary provided much of the required assistance as she handled decedent's mail, paid his bills with authority to draw on his checking account, and drove him to meetings with his doctors and lawyers.

In April 2003, decedent conveyed a house and ten acres to himself and Ary in joint tenancy, and in November 2004, decedent gave Ary a check for $5,000 (the subject transfers). The subject transfers are the contested transactions at issue in this case.

Krueger, who is also decedent's daughter and sole surviving child, filed this action shortly after decedent's death in April 2005. She claimed the subject transfers were the result of Ary's breach of her fiduciary duty, fraud, and undue influence. Ary responded that the subject transfers were valid gifts.

At trial, the parties presented conflicting evidence as to whether the subject transfers resulted from a breach of fiduciary duty, fraud, and undue influence. During trial, Krueger tendered jury instructions similar to two pattern instructions on the presumptions of undue influence and unfairness created by evidence showing that parties to a fiduciary or confidential relationship entered a transaction from which the fiduciary benefited. The trial court refused to instruct the jury on these presumptions. The jury returned a verdict in favor of Ary, and this appeal followed.

## II. Jury Instructions

Krueger contends the trial court reversibly erred by refusing to instruct the jury on two presumptions regarding the subject transfers. Specifically, she contends the court erred by refusing to instruct the jury that the subject transfers were presumed to be (1) the product of undue influence because Ary and decedent shared a fiduciary or confidential relationship, and Ary actively participated in the creation of the documents under which the transfers were made; and (2) unfair, unjust, and unreasonable because of the confidential relationship between decedent and Ary. We disagree because we conclude these presumptions "disappear" from the case when rebutting evidence is presented.

### A. Standard of Review

The trial court has discretion to determine the form and style of the instructions to be given to the jury. We will not overturn a trial court's decision on a jury instruction absent an abuse of discretion. *Woznicki v. Musick*, 119 P.3d 567, 573 (Colo. App.2005). If the instructions properly inform the jury of the law, no reversible error can be found. *Id.*

### B. Elemental Instructions

Here, on Krueger's claim regarding the transfer of real property, the trial court gave the following elemental instruction:

### JURY INSTRUCTION NO. 11

For the plaintiff, Mary K. Krueger as Personal Representative of the Estate of Iver M. Villa decedent, to recover from the defendant, Marlyn L. Ary, on her claim for return of real property conveyed into joint tenancy, you must find all of the following (item 1, item 2a or 2b, and item 3a or 3b) have been proved by a preponderance of the evidence:

1. The decedent, Iver M. Villa, by warranty deed, conveyed real property into joint tenancy between himself and defendant Marlyn Ary;

2. At the time, the decedent and the defendant were either (a) in a confidential relationship in which the defendant was the dominant member of that relationship or (b) in a fiduciary relationship;

3. Either (a) the warranty deed was procured from the decedent by the defendant's exercise of undue influence upon the decedent, or (b) the conveyance was unfair, unjust or unreasonable.

If you find that one or more of these three (3) statements has not been proved, then your verdict must be for the defendant.

On the other hand, if you find that all of these three (3) statements have been proved, then your verdict must be for the plaintiff.

Similarly, on Krueger's claim regarding the $5000 check, the court instructed the jury as follows:

### JURY INSTRUCTION NO. 12

For the plaintiff, Mary K. Krueger as Personal Representative of the Estate of Iver M. Villa, decedent, to recover from defendant, Marlyn L. Ary, on her claim for money conveyed by check from decedent to defendant, you must find all of the following (item 1, item 2a or 2b, and item 3a or 3b) have been proved by a preponderance of the evidence:

1. The decedent, Iver M. Villa, conveyed money by check to defendant;

2. At the time, the decedent and the defendant were either (a) in a confidential relationship in which the defendant was the dominant member of that relationship or (b) in a fiduciary relationship;

3. Either (a) the check was procured from the decedent by defendant's exercise of undue influence upon the decedent, or (b) the conveyance was unfair, unjust or unreasonable.

If you find that one or more of these three (3) statements has not been proved, then your verdict must be for the defendant.

On the other hand, if you find that all of these three (3) statements have been proved, then your verdict must be for the plaintiff.

The trial court also gave instructions to the jury defining fiduciary and confidential relationships and undue influence. None of those instructions is challenged on appeal.

## C. Presumption of Undue Influence

Krueger first contends the trial court erred by refusing to instruct the jury that the subject transfers were presumed to be the product of undue influence if the jury found that Ary was in a fiduciary relationship with decedent and actively participated in preparing the documentation of the transfers. She further contends that, because the jury was not instructed to consider this presumption along with the evidence presented, she was substantially prejudiced by the trial court's error and the judgment should, therefore, be reversed. We disagree, because we conclude the trial court followed the applicable Colorado law, including binding precedent from the supreme court, when it rejected Krueger's tendered jury instruction on the presumption of undue influence.

■ To warrant setting aside a conveyance on the ground of undue influence, "the undue influence must be such as to overcome the will of the grantor to the extent that he is prevented from voluntary action and is deprived of free agency." *Anderson v. Lindgren,* 113 Colo. 401, 406, 157 P.2d 687, 689 (1945). The trial court's instruction here on undue influence was consistent with this test.

■ Once a fiduciary relationship and a transfer of property to the fiduciary have been established by the plaintiff, a rebuttable presumption is created that requires the defendant to go forward with some evidence to show the transaction was not procured through undue influence. *Eads v. Dearing,* 874 P.2d 474, 477 (Colo.App.1993); *see Judkins v. Carpenter,* 189 Colo. 95, 97–98, 537 P.2d 737, 738 (1975); *Lesser v. Lesser,* 128 Colo. 151, 157–58, 250 P.2d 130, 133–34 (1952).

■ The status and strength of a rebuttable presumption vary according to the strength of the policies which motivate a court or a legislature to create it. *Cline v. City of Boulder,* 35 Colo.App. 349, 353, 532 P.2d 770, 772 (1975). When a party introduces evidence rebutting such a presumption, the presumption is treated in one of two ways. First, if the presumption is one that remains in the case as "some evidence" of the presumed fact even when there is evidence rebutting the presumption, the fact finder considers the presumption together with all the evidence in the case when determining its ultimate finding of fact. *See, e.g., Ravin v. Gambrell,* 788 P.2d 817, 822 (Colo.1990) (trial court must instruct jury on presumption of negligence embodied in doctrine of res ipsa loquitur where plaintiff introduces sufficient evidence to establish presumption); *Cline,* 35 Colo.App. at 354, 532 P.2d at 773 (presumption of validity of city council special assessment); *see also* CJI–Civ. 4th 3:5 (1998) (CJI 3:5) (version 2). Second, if the presumption is one that "disappears" from the case when rebutting evidence is introduced, the case goes to the fact finder free from the presumption. *See, e.g., City & County of Denver v. DeLong,* 190 Colo. 219, 223, 545 P.2d 154, 157 (1976) ("presumption of due care instruction should not be given when direct and credible evidence supports a contrary conclusion, and the presumption is only operative when no reliable proof to the contrary exists"); *Schenck v. Minolta Office Sys., Inc.,* 802 P.2d 1131, 1133–34 (Colo.App.1990) (instruction on presumption of probable cause in malicious prosecution case not required where presumption rebutted with evidence); *1st Charter Lease Co. v. McAl, Inc.,* 679 P.2d 114, 116 (Colo.App.1984) (presumption that value of repossessed collateral is at least equal to amount of outstanding debt not considered where evidence rebutting presumption introduced); *see also A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1037 (Fed.Cir.1992) (under "bursting bubble" theory adopted by Fed.R.Evid. 301, "a presumption is not merely rebuttable but completely vanishes upon introduction of evidence sufficient to support a finding of the nonexistence of the presumed fact"); CJI 3:5 (version 3).

■ Colorado case law expressly treats the rebuttable presumption of undue influence where a fiduciary receives a benefit from a transaction in which he or she actively participates as one that "disappears" from the case when it is rebutted by evidence. In *Columbia Savings & Loan Ass'n v. Carpenter,* 33 Colo.App. 360, 367, 521 P.2d 1299, 1302 (1974), *rev'd on other grounds sub nom. Judkins v. Carpenter,* 189 Colo. 95, 537 P.2d 737 (1975), a division of this court examined the conflicting case law regarding this presumption and concluded that "where any evi-

dence rebutting the presumption is introduced, the presumption disappears, and the case goes to the fact finder free from the presumption."

In reaching this conclusion, the division resolved a conflict between *Lesser* and *Hilliard v. Shellabarger*, 120 Colo. 441, 210 P.2d 441 (1949), over the effect of the presumption. In *Hilliard*, the supreme court held that, once established, the presumption on undue influence shifted to the defendant the burden of proving the transaction was fair, just, and reasonable. *Hilliard*, 120 Colo. at 446, 210 P.2d at 443–44.

However, four years later, the supreme court held in *Lesser* that the presumption of undue influence only shifts the burden of going forward with the evidence to the party seeking to uphold the transaction. *Lesser*, 128 Colo. at 157–58, 250 P.2d at 133–34. The court further explained that the presumption disappears when evidence is produced rebutting the presumption. *Id.* at 158, 250 P.2d at 134 (quoting IX *Wigmore on Evidence* § 2491, subparas. 2 & 3, at 289–90 (3d ed.)).

While acknowledging that *Lesser* failed to discuss *Hilliard*, the division in *Columbia* found the relevant facts of the two cases indistinguishable and concluded that *Lesser*, the more recent discussion of the issue by the supreme court, was the controlling authority on the effect of the presumption of undue influence. *Columbia*, 33 Colo.App. at 367, 521 P.2d at 1302. The division thus concluded that "[t]o the extent that there is a conflict between *Hilliard* and *Lesser*, the more recent *Lesser* case must be considered to overrule sub silentio the rule announced in *Hilliard*." *Id.* at 367, 521 P.2d at 1303.

On certiorari, the supreme court approved the division's legal conclusion in *Columbia* regarding the effect of the presumption of undue influence. *Judkins*, 189 Colo. at 97, 537 P.2d at 738. In *Judkins*, the supreme court expressly agreed with the division in *Columbia* that *Lesser* controls and that the conflicting language in *Hilliard* "is rejected." *Id.* The court then reversed *Columbia* on other grounds, concluding that the record in that case supported the trial court's finding of undue influence regardless of the trial court's incorrect application of the presump-

tion of undue influence. *Id.* at 98, 537 P.2d at 739.

Here, the record shows, and the parties agree, that Krueger introduced evidence sufficient to establish a presumption that the subject transfers were procured by undue influence. The parties also agree that Ary introduced rebutting evidence that would support a finding that the subject transfers were not procured by undue influence. Over Krueger's objection, the trial court refused to instruct the jury to consider the presumption of undue influence along with the evidence in the case.

Ary defends the trial court's refusal to instruct by citing *Judkins* and *Columbia*. She argues that, under these authorities, the presumption that she procured the subject transfers through undue influence disappeared from the case when she introduced evidence rebutting that presumption. *See* CJI 3:5 (version 3).

Krueger contends the presumption of undue influence is one that remains in the case as "some evidence" even where, as here, rebutting evidence is introduced. *See* CJI 3:5 (version 2). In support of her contention, Krueger relies primarily on CJI–Civ. 4th 34:16 (CJI 34:16), which states that where a beneficiary under a will was in a confidential or fiduciary relationship with the testator and was actively involved with the preparation or signing of the will, the law presumes that the will was signed under undue influence. CJI 34:16.

When instructing the jury on the presumption of undue influence, CJI 34:16 provides two alternatives. First, if there is no or insufficient evidence rebutting the presumption, the jury is instructed that it must find that the will was signed under undue influence. CJI 34:16(3). Second, if there is sufficient rebutting evidence, the jury is instructed to consider the presumption together with all the other evidence in the case. *Id.* Here, the trial court gave neither instruction on the presumption of undue influence.

■ Krueger contends that, pursuant to C.R.C.P. 51.1(1), the trial court was required to instruct the jury to consider the presumption together with all other evidence in the

case in determining whether the subject transfers where procured through undue influence. Because we conclude *Judkins* and *Columbia* are dispositive of the issue here, we disagree.

■ Initially, we reject Ary's contention that CJI 34:16 is inapplicable here because it is specific to wills and will contest cases. Despite the fact that CJI 34:16 appears in the "wills" chapter of the civil jury instructions, the undue influence presumption also applies to inter vivos transfers arising out of a confidential or fiduciary relationship. *See, e.g., Judkins,* 189 Colo. 95, 537 P.2d 737; *Lesser,* 128 Colo. 151, 250 P.2d 130; *Sarvas v. Morrell,* 122 Colo. 86, 220 P.2d 367 (1950); *Mehlbrandt v. Hall,* 121 Colo. 165, 213 P.2d 605 (1950); *cf. Columbia,* 33 Colo.App. at 368, 521 P.2d at 1303 (cases defining testamentary capacity applicable to issue of mental capacity to make an inter vivos gift).

We also recognize that, contrary to *Judkins* and *Columbia,* CJI 34:16 appears to cast the presumption of undue influence as one that remains in the case as "some evidence" of undue influence, rather than one that "disappears" from the case, when rebutting evidence is introduced. *See* CJI 34:16; *see also* CJI 34:16 notes on use 3, 4.

We thus recognize a tension between *Judkins* and *Columbia* on the one hand, and CJI 34:16 on the other. Krueger contends that CJI 34:16 controls because it was promulgated after *Judkins* and *Columbia* and thus represents the current state of the law. Ary contends *Judkins* and *Columbia* control because they express the prevailing Colorado law. We agree with Ary that *Judkins* and *Columbia* are dispositive and prevail over contrary CJI pattern instructions.

■ Instructions found in CJI "are not to be used if they do not reflect the prevailing law." *Fed. Ins. Co. v. Pub. Serv. Co.,* 194 Colo. 107, 110, 570 P.2d 239, 241 (1977); *see* C.R.C.P. 51.1(1); *Boettcher DTC Bldg. Joint Venture v. Falcon Ventures,* 762 P.2d 788, 790 (Colo.App.1988) ("trial court is required to modify jury instructions to reflect changes in the law"); *Short v. Kinkade,* 685 P.2d 210, 211 (Colo.App.1983) ("pattern jury instruction is intended as a model and will yield to prevailing law"); *Gallegos v. Graff,* 32 Colo. App. 213, 215, 508 P.2d 798, 799 (1973).

■ Even where a pattern instruction is promulgated subsequent to the authority expressing the prevailing law, the trial court must modify the pattern instruction to conform to prevailing law if a conflict between them exists. *See Short,* 685 P.2d at 211–12. In *Short,* a division of this court reversed the judgment of the trial court because it refused to modify a pattern jury instruction to reflect the prevailing law regarding a specialist's standard of care. *Id.* Because no Colorado cases specifically answered the question presented in *Short,* the division derived the prevailing law from secondary authority. *Id.* at 211. The division then held that the pattern jury instruction, which was promulgated subsequent to those authorities, must yield to the prevailing law as expressed in those authorities. *Id.* at 212; *see also Fed. Ins. Co.,* 194 Colo. at 110, 570 P.2d at 241 (CJI "is neither a restatement nor an encyclopedia of the prevailing law").

Although the instructions and notes contained in CJI are not law, *see Fed. Ins. Co.,* 194 Colo. at 110, 570 P.2d at 241, and Colorado case law dispositive on this issue exists, we address CJI's treatment of the presumption of undue influence because Krueger's contention here relies so heavily on the CJI instructions and their notes on use.

We first consider that CJI 34:16 was promulgated subsequent to *Judkins* and *Columbia.* Indeed, the notes on use for CJI 34:16 acknowledge these cases as contrary authority to the proposition that the presumption of undue influence was, prior to the adoption of CRE 301, one that shifted the burden of proof to the proponent of a will to disprove undue influence. CJI 34:16 notes on use 3.

The primary authority cited in the notes on use in support of the instruction is *Arnold v. Abernethy,* 134 Colo. 573, 307 P.2d 1106 (1957). In *Arnold,* the supreme court held that the active participation of a beneficiary in the execution of a transaction where the beneficiary was in a fiduciary relationship with the grantor created a presumption of undue influence requiring the fiduciary to prove the transaction was fair, just, and reasonable. *Id.* at 577, 307 P.2d at 1108 (citing *Hilliard*). The court in *Arnold* did not discuss *Lesser,* which five years earlier held

that the presumption disappeared with the introduction of "some evidence" rebutting the presumption. *Lesser,* 128 Colo. at 158, 250 P.2d at 134.

Although *Columbia* and *Judkins* did not discuss *Arnold,* the language from *Hilliard* rejected by the supreme court in *Judkins* is equivalent to the holding in *Arnold.* *See Judkins,* 189 Colo. at 97, 537 P.2d at 738. In our view, *Judkins* effectively rejected the language from *Arnold* that shifted the burden of proof to the party seeking to uphold a transaction against a claim of undue influence when it rejected the equivalent language from *Hilliard.*

Further, the notes on use of CJI 34:16 are not clear as to the reasons the Committee on Civil Jury Instructions followed *Arnold* rather than *Judkins* and *Columbia.* However, our conclusion here is supported by several other CJI notes on use.

First, CJI 34:16 notes on use 2 recognizes the possibility that the presumption of undue influence may not be one that remains in the case as "some evidence." *See* CJI 34:16 notes on use 2 ("if there is sufficient rebutting evidence (*and assuming* the presumption covered by this instruction is one that stays in the case as 'some evidence,' even when rebutted)," the jury must be instructed to consider the presumption together with the evidence (emphasis added)).

Further, *Judkins* and *Columbia* are also cited in the notes on use for the general instruction on presumptions. *See* CJI 3:5 notes on use 6 & 7. These notes rely on *Judkins* and *Columbia* to support version 3 of CJI 3:5, which states that no instruction on a presumption should be given where there is sufficient rebutting evidence and the presumption is one that "disappears" from the case. *Id.* The notes also cite cases supporting version 2 of CJI 3:5, which deal with presumptions that remain in the case as "some evidence" of the presumed fact even when there is sufficient rebutting evidence. *Id.* These notes do not mention *Arnold* or *Hilliard* as support for this type of presumption. The notes on use to the general instruction on presumptions thus treat the presumption of undue influence at issue here as one that "disappears" from the case where there is sufficient rebutting evidence.

When taken as a whole, the pattern instructions and notes in CJI do not unambiguously support Krueger's contention that *Hilliard* and *Arnold* express the prevailing law in regard to the presumption of undue influence. If anything, the instructions and notes, especially CJI 3:5 and its reliance on *Judkins* and *Columbia,* suggest that the presumption of undue influence is one that "disappears" from the case when there is sufficient rebutting evidence.

Even if the pattern instructions and their notes clearly supported Krueger's contention that the presumption of undue influence was one that remained in the case as "some evidence," the trial court would have nevertheless been compelled to follow the prevailing law as expressed in *Judkins* and *Columbia.* *See Fed. Ins. Co.,* 194 Colo. at 110, 570 P.2d at 241.

Accordingly, because Ary adduced sufficient evidence to rebut the presumption of undue influence, we conclude the trial court did not err in refusing to instruct the jury to consider that presumption together with other evidence in the case and that the court did not abuse its discretion in sending the case to the "fact finder free from the presumption." *Columbia,* 33 Colo.App. at 367, 521 P.2d at 1302.

### D. Presumption of Unfairness

Krueger similarly contends the trial court erred by refusing to instruct the jury, consistent with CJI–Civ. 4th 30:16 (CJI 30:16), to consider the presumption that the subject transfers were unfair, unjust, and unreasonable together with other evidence in the case. Again, we disagree, because we conclude the holdings of *Judkins* and *Columbia,* as discussed above, apply with equal force to the presumption of unfairness and, thus, are dispositive of this contention.

The presumption that transactions between parties in a confidential or fiduciary relationship are unfair, unjust, and unreasonable where the fiduciary benefits from the transaction is established under the same line of authority that established the presumption of undue influence discussed above. *See Woodhams v. Amy,* 148 Colo. 255, 257–58, 365 P.2d 696, 697–98 (1961)(citing *Hilli-*

*ard,* 120 Colo. at 449, 210 P.2d at 445, and *Zink v. Carlile,* 126 Colo. 208, 215, 248 P.2d 306, 310 (1952)); *Arnold,* 134 Colo. at 577–78, 307 P.2d at 1108 (citing same cases); *Lesser,* 128 Colo. at 157–58, 250 P.2d at 133–34 ("confidential relationship raised a presumption against the validity of the [transaction], and placed the burden of going forward with the evidence upon the defendant"); *Zink,* 126 Colo. at 215, 248 P.2d at 310; *Hilliard,* 120 Colo. at 449, 210 P.2d at 445. *Compare* CJI–Civ. 4th 30:15 source and authority (CJI 30:15) (presumption of unfairness supported by *Arnold* ), *with* CJI 34:16 notes on use 3 (same as to presumption of undue influence).

Throughout this line of authority, the two presumptions are used interchangeably and treated identically. For example, in *Woodhams,* the supreme court first discussed the presumption that transactions between parties in a fiduciary relationship are presumed unfair and unreasonable by citing *Zink* and *Lathrop v. Pollard,* 6 Colo. 424 (1882). *Woodhams,* 148 Colo. at 257, 365 P.2d at 697–98. The court further explained the doctrine set out in *Zink* and *Lathrop* by citing *Hilliard* and the presumption of undue influence as a discussion of the same doctrine. *Id.* at 258, 365 P.2d at 697–98.

In *Arnold,* the supreme court conflated the two presumptions by holding that where parties to a transaction maintain a fiduciary relationship, the fiduciary bears the burden of proving the transaction was "in fact fair, just and reasonable" to overcome the presumption that the transaction was "obtained by undue influence, or fraud." *Arnold,* 134 Colo. at 577, 307 P.2d at 1108. Similar to *Woodhams, Arnold* also cited *Hilliard* and the presumption of undue influence to explain *Zink* and the presumption of unfairness. *Id.* at 577–78, 307 P.2d at 1108.

 Because we perceive no distinction between the treatment given to the presumption of undue influence and the presumption of unfairness where parties to a transaction maintain a fiduciary or confidential relationship, we conclude that *Judkins* and *Columbia* control the status of the presumption of unfairness in the same manner as the presumption of undue influence. The presumption of unfairness is thus one that "disappears" from the case where sufficient evidence is introduced to rebut the presump-

tion. *See Columbia,* 33 Colo.App. at 366–67, 521 P.2d at 1302 (citing *Lesser,* 128 Colo. at 158, 250 P.2d at 134).

Nevertheless, Krueger relies again on CJI to support her contention that the presumption of unfairness is one that remains in the case as "some evidence" where there is rebutting evidence. She correctly points out that CJI 30:15 notes on use 3 states that where there is sufficient evidence to rebut the presumption that transactions made by parties in fiduciary or confidential relationships are unfair, unjust, and unreasonable, the jurors must be instructed that, in order to find for the plaintiff, they must find that the transaction was either unfair, unjust, or unreasonable. *See also* CJI 30:15(3). According to the applicable notes on use, if the court gives this instruction, it must also give the jury CJI 30:16, which instructs the jury to consider the presumption that the transaction was unfair, unjust, and unreasonable together with all the other evidence in the case. *See* CJI 30:16 notes on use. From the face of CJI 30:15 and 30:16, the presumption of unfairness appears to be one that remains in the case as "some evidence" when there is rebutting evidence. Krueger contends once again that CJI reflects the current state of the law and that the trial court erred by not giving the jury an instruction consistent with CJI 30:16. We disagree.

Again, we resolve any tension between CJI pattern instructions and Colorado case law in favor of the prevailing case law. *See Fed. Ins. Co.,* 194 Colo. at 110, 570 P.2d at 241.

In support of the presumption of unfairness set forth in CJI 30:15 and 30:16, CJI cites a line of cases that establishes the existence of the presumptions of unfairness and undue influence. CJI 30:15 source and authority (citing, among others, *Woodhams; Arnold; Zink; Hilliard; Dittbrenner v. Myerson,* 114 Colo. 448, 167 P.2d 15 (1946); and *Bohl v. Haney,* 28 Colo.App. 55, 470 P.2d 603 (1970)). CJI once again recognizes the contrary authority as to the status of the presumption as articulated in *Judkins* and *Columbia,* but is unclear as to why it instead relies on the *Hilliard* line of cases.

Contrary to the position apparently taken by CJI 30:15 and 30:16, we perceive *Judkins*

and *Columbia* to be the most recent expression of the prevailing law on the presumption of unfairness as well as the presumption of undue influence. By rejecting specific language from *Hilliard* regarding the presumptions of undue influence and unfairness, and approving *Columbia's* discussion of the cases preceding *Hilliard* and *Lesser,* the supreme court in *Judkins* effectively rejected the language found in the cases cited by CJI to support the pattern instruction in CJI 30:16 on the presumption of unfairness. First, *Woodhams* and *Arnold* both relied on the language from *Hilliard* that the supreme court subsequently rejected in *Judkins* in favor of the language from *Lesser. See Woodhams,* 148 Colo. at 258, 365 P.2d at 698; *Arnold,* 134 Colo. at 578, 307 P.2d at 1108. Further, the division in *Columbia* discussed *Hilliard, Dittbrenner, Zink,* and *Bohl* before concluding that the rule set out in *Lesser* was controlling. *Columbia,* 33 Colo.App. at 364–67, 521 P.2d at 1301–03. In doing so, the division explicitly overruled *Bohl* to the extent it was in conflict with *Lesser. Id.* at 367, 521 P.2d at 1303. Finally, the supreme court in *Judkins* agreed with the analysis in *Columbia* and expressly rejected conflicting language from *Hilliard. Judkins,* 189 Colo. at 97, 537 P.2d at 738.

Because *Judkins* and *Columbia* effectively rejected the language in cases relied upon by CJI 30:15 and 30:16 to cast the presumption of unfairness as one that remains in the case as "some evidence," we conclude the prevailing law is expressed by the adoption in *Judkins* of the rule announced in *Lesser,* which casts the presumptions of undue influence and unfairness as ones that "disappear" from the case when there is sufficient rebutting evidence.

The trial court was required to modify the CJI pattern instructions according to prevailing law. *Fed. Ins. Co.,* 194 Colo. at 110, 570 P.2d at 241. Accordingly, we conclude the trial court did not err by modifying CJI 30:15 and refusing to give the jury CJI 30:16, because the prevailing law as set forth in *Judkins* and *Columbia* holds that, where, as here, there is sufficient evidence to rebut the presumption, the case goes to the fact finder free from the presumptions of undue influence and unfairness. *See Judkins,* 189 Colo.

at 97, 537 P.2d at 738; *Columbia,* 33 Colo. App. at 366–67, 521 P.2d at 1302.

Because we conclude the trial court's instructions adequately and correctly instructed the jury on the applicable law, including binding supreme court precedent on the presumptions of undue influence and unfairness, we thus perceive no abuse of discretion in the trial court's rejection of Krueger's tendered instructions.

The judgment is affirmed.

Judge GRAHAM and Judge ROMÁN concur.